Darlene BROWN, Mary Kennedy and Daniel Wells, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

The Honorable Addeliar D. GUY, Individually and in his official capacity as Juvenile Court Judge in the Eighth Judicial District Court, the Honorable Michael J. Wendell, Individually and in his official capacity as Judge in the Eighth Judicial District Court, the Honorable Jack Butler, Individually and in his official capacity as Referee of Juvenile Court in the Eighth Judicial District Court, and all other District Court and Juvenile Judges of Clark County, Nevada, Individually and in their official capacity as Judges in the Eighth Judicial District Court, Defendants.

No. CIV–LV–79–128, HEC.

United States District Court,
D. Nevada.

Aug. 13, 1979.

Clark County Legal Services, Nripendra N. Singh, by Daniel Marks, Robert H. Thompson, North Las Vegas, Nev., for plaintiffs.

Robert J. Miller, Dist. Atty. by Stanley W. Parry, Scott W. Doyle, Deputy Dist. Attys., Civ. Div., Las Vegas, Nev., for defendants.

## AMENDED DECISION

CLAIBORNE, District Judge.

This matter comes before the Court upon the motion of the Plaintiffs for a preliminary injunction and for declaratory relief. The Plaintiffs are indigent parents who may be deprived of the custody of their children in child neglect or abuse proceedings and in termination of parental rights proceedings in the Eighth Judicial District Court of Clark County, Nevada. The Plaintiffs seek relief by seeking a preliminary injunction enjoining the Defendants from further action in said cases until the Court has appointed counsel for the Plaintiffs and for a declaratory judgment that they are entitled to counsel. Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1343(3), (4) and 42 U.S.C. § 1983.

The Plaintiffs were proceeded against by the State of Nevada by petitions duly filed in the Eighth Judicial District Court in and for the County of Clark wherein the Plaintiffs were accused of neglect and/or child abuse whereby the State seeks a termination of their parental rights by reason of such neglect and/or abuse. Plaintiffs upon being served with the aforesaid petitions filed motions with the Court supported by affidavits alleging that each of them were indigent parents and without funds with which to hire counsel and requesting Court appointed counsel. These motions were denied by the trial judges upon the same ground, to wit: that it was not the policy of the Court to appoint counsel for indigent parents in proceedings pertaining to the custody, neglect or abuse of their children.

Therefore, the issue squarely before this Court is: did the Eighth Judicial District Court of the State of Nevada in and for the County of Clark deny these indigent parents procedural and substantive due process of law, and equal protection under the law by refusing to appoint counsel for them? I must answer this in the affirmative.

As early as 1963, the Supreme Court of the United States recognized the appointment of counsel to an indigent defendant in a criminal case was a fundamental right essential to a fair trial in its landmark decision of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 when it said:

> From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in *Powell v. Alabama*: "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he

is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

■ I see little distinction between civil and criminal proceedings as far as constitutional significance is concerned. Loss of liberty is still loss of liberty whether it occurs in civil or criminal litigation. The loss is no less merely because the adversary proceeding is labeled "civil". Indeed, the factor of punishment inherent in the stigma which attaches to a parent who has been found guilty of child abuse or neglect by civil decree may be more traumatizing than a fine or imprisonment in a criminal proceeding. Too, the loss of one's child may be the severest form of punitive sanction. Similarly, a child removed from parental custody may suffer such serious emotional disturbance and conflict that his ability to function as a normal human being in a free society is impaired to such an extent that he can gain no meaningful benefit from his constitutional right to the pursuit of happiness. The family has been traditionally recognized by society as the most basic human and psychological unit, and when the State intrudes with its vast resources in an attempt to disassemble that unit, then every safeguard under the law must be abundantly exercised by the Court to guarantee that the inherent imbalance of experience and expertise between the parent and state is minimized to the greatest extent humanly possible. Truly, then one of the essentials would be to put the parent in a near equal position as far as counsel is concerned with the State. Thusly, a minimum standard of due process requires that an indigent parent charged with neglect or abuse facing the potential for termination of parental rights and even criminal prosecution be furnished Court appointed counsel.

■ A parent's right to the companionship, care, custody and control of their children is fundamental and protected by the due process clause of the Fourteenth Amendment, though not enumerated in the amendment itself. However, a right is determined to be fundamental by ranking constitutional rights, called "Spectrum of rights" by the U. S. Court of Appeals for the Fifth Circuit. They said in *Karr v. Schmidt*, 460 F.2d 609 (1972):

At one end of the spectrum are the great liberties such as speech, religion, and association specifically guaranteed in the Bill of Rights. Of equal importance are liberties such as the right of marital privacy that are so fundamental that, even in the absence of a positive command from the Constitution, they may be restricted only for compelling state interests. At the other end of the spectrum are the lesser liberties that may be invaded by the state subject only to the same minimum test of rationality that applies to all state action. See, e. g., *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).

Liberty as used in the Fourteenth Amendment was defined by the United States Supreme Court in *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1932), as:

While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at

774

common law as essential to the orderly pursuit of happiness by free men.

This right of parental custody and control of their children being protected by the due process clause of the Fourteenth Amendment is not new.

In *Stanley v. Illinois*, 405 U.S. 645 at 651, 92 S.Ct. 1208 at 1212, 31 L.Ed.2d 551 the Supreme Court of the United States said:

The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), "basic civil rights of man," *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and "[r]ights far more precious . . . than property rights," *May v. Anderson*, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953). "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska, supra*, 262 U.S. at 399, 43 S.Ct. at 626, the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma, supra*, 316 U.S., at 541, 62 S.Ct., at 1113, and the Ninth Amendment, *Griswold v. Connecticut*, 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring).

Then if the family integrity is a constitutionally protected right under the due process clause of the Fourteenth Amendment, then it must be made meaningful.

■ In these cases, the Department of Welfare is represented by an attorney for the State. The attorney is usually assigned to that department for extended periods of time and develops experience and expertise in the trial of such matters. He is aided in his case by numerous social workers, investigators and staff members all highly trained. He has access to all public agencies and the department's records. The thought of an indigent parent, most generally uneducated, facing this battery of experience, power and expertise in an adversary proceeding without counsel is as terrifying to this Court as it surely must be to the parent. Surely, if the principle of equal justice under the law is to be maintained, an indigent parent in this situation must be afforded counsel.

I have not lost sight of the financial expense the state will be put to as a result of this decision, but this was explained by the U. S. Court of Appeals for the Ninth Circuit in *Cleaver v. Wilcox*, 499 F.2d 940 (1974) when it said:

The state's interest in saving public money does not outweigh society's interest in preserving viable family units and the parent's interest in not being unfairly deprived of control and custody of a child. Protection of a right as fundamental as that of child custody cannot be denied by asserting that counsel in civil litigation has always depended upon the free enterprise generalization that one usually gets what one pays for.

■ This Court does not hold that in all future dependency proceedings that counsel should be appointed. I hold that due process requires the state to appoint counsel whenever an indigent parent, unable to present his case properly, faces a reasonable possibility of the termination of his parental rights or of prolonged separation from a child. In other words, the District Court Judge should determine the need for Court appointed counsel on a case by case basis, taking into consideration such factors as suggested in *Cleaver v. Wilcox, supra*:

One such factor is the length of the separation which the parents may face . . . The greater the probability of removal, based upon the facts of the case and the social-service worker's recommendation, the more pressing will be the need for appointed counsel. A second factor is the presence or absence of parental consent

or of disputed facts. Also relevant is the parent's ability to cope with relevant documents and the examination of witnesses. The more complex the case, the more counsel can contribute to the hearings. Finally, should the judge refuse a request for counsel, it is important that the grounds for the refusal be stated in the record so that meaningful judicial review of the refusal can be had in the state courts.

It being concluded at the hearing on the Motion for Preliminary Injunction that the sole issue, being a question of law, was also decisive as to the declaratory relief sought by Plaintiffs, and having been disposed of by this opinion, it is therefore ordered that judgment should be entered for the Plaintiffs Brown, Kennedy and Wells and for the Defendants as to the class.