No. 51,276

In the Interest of JULIE COOPER, A Juvenile Under Age Eighteen.

(631 P.2d 632)

Opinion filed July 17, 1981.

*Lowell Paul,* of Legal Aid Society of Topeka, Inc., argued the cause, and *Larry R. Rute,* of the same firm, was with him on the brief for the appellant mother.

*Sue Carpenter,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *David Skidgel,* guardian ad litem, of Topeka, were with her on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This matter comes to this court on a Petition for Review of the decision of the Court of Appeals found at 5 Kan. App. 2d 584, 621 P.2d 437 (1980). It stems from juvenile proceedings on a petition alleging that Julie Cooper, age one year,

was a deprived child. The definition of a deprived child is found in K.S.A. 1980 Supp. 38-802(*g*):

"(*g*) 'Deprived child' means a child less than eighteen (18) years of age:

"(1) Who is without proper parental care or control, subsistence, education as required by law or other care or control necessary for such child's physical, mental or emotional health, and the deprivation is not due solely to the lack of financial means of such child's parents, guardian or other custodian;

. . . . .

"(3) who has been abandoned or physically, mentally, emotionally abused or neglected or sexually abused by his or her parent, guardian or other custodian;"

Sufficiency of the evidence is not in question. The district court after appointing an attorney for the child, as required by K.S.A. 1980 Supp. 38-817, proceeded with the hearing.

The mother, Marilyn Dickey, was present and was advised of her right to retain counsel. She proceeded with the hearing without counsel, without requesting counsel, and without having a determination made as to whether she could afford counsel. The attorney appointed for the child was present throughout the hearing and both he and the child's mother took part in the proceedings and questioned the State's witnesses. Marilyn Dickey testified at length against the State's position. At the conclusion of the hearing the legal care, custody and control of the child, Julie Cooper, were continued with the Department of Social and Rehabilitation Services until further order of the district court. Visitation rights were granted to the parents. The parents were ordered to undergo psychological and psychiatric testing as to their abilities to carry out the duties of parents. They were ordered to attend the Child Development Center program at the Topeka State Hospital, along with the child.

On appeal of the judgment to the Court of Appeals the mother, Marilyn Dickey, presented two points. The second point concerned the sufficiency of the district court's findings and conclusions. The Court of Appeals examined the findings and conclusions and approved their sufficiency. The point was not raised on the Petition for Review and we consider that matter settled.

The first point raised in the Court of Appeals concerned the failure of the trial court to appoint an attorney for the mother, Marilyn Dickey. The Court of Appeals concluded that in every "deprived child" hearing the parents are not only entitled to have counsel present during the hearing but indigency must be determined and if indigent they are entitled to counsel at the expense of the county. The court held the requirement of counsel is no

different in a "deprived child" hearing, when the custody is taken from the parent temporarily, than it is in severance proceedings when custody is permanently severed.

The case was remanded to the trial court with directions to determine whether Marilyn Dickey was indigent at the time of the "deprived child" hearing. If Marilyn Dickey was found to be indigent at the hearing, the judgment was ordered reversed and the trial court was directed to appoint an attorney for her at the county's expense, and a new trial was to be granted to her.

The district attorney on behalf of the State filed a Petition for Review, pointing out that the question was one of first impression in Kansas. The district attorney contends the decision has far-reaching effects in all juvenile proceedings and that the question deserves a more definitive treatment. We granted review.

At the outset it is noted all statutory references to the juvenile code will be found in the K.S.A. 1980 Supplement. The policy under the juvenile code is stated at 38-801 as follows:

"This act shall be liberally construed, to the end that each child coming within its provisions shall receive such care, custody, guidance, control and discipline, preferably in the child's own home, as will best serve the child's welfare and the best interests of the state. In no case shall any order, judgment or decree of the district court, in any proceedings under the provisions of this act, be deemed or held to import a criminal act on the part of any child; but all proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state."

When there is a permanent deprivation or severance of parental rights both the statute, 38-820, and the case law, *In re Brehm,* 3 Kan. App. 2d 325, 594 P.2d 269 (1979), require that the natural parent or parents be represented by counsel at the hearing. If the parent is financially unable to employ counsel, the court must assign counsel to the parent at the expense of the county. The question now confronting this court is whether it is necessary and appropriate to extend this right to "deprived child" hearings where there is a temporary loss of custody with a view to giving care, guidance and discipline such as will best serve the child's welfare in the exercise of the parental power of the State.

With regard to permanent severance of parental rights, the statute in pertinent part states:

"In any proceedings pursuant to the juvenile code in the district court in which the parent . . . may be deprived of the permanent custody of such child, summons shall issue to such parent. . . . Such summons shall

state . . . the time and place of the hearing and a statement requiring the person named in the summons to appear and there show cause why he or she should not be *deprived of the permanent custody* of _____ (name of child)." 38-818. Emphasis supplied.

## 38-820 provides:

"No order or decree permanently depriving a parent of his or her parental rights in a deprived child . . . shall be made unless . . . such parent is represented by counsel and present in the district court or has been served with summons. The judge of the district court *shall assign an attorney to any such parent who is unable to employ counsel* and may award a reasonable fee to said counsel to be paid from the general fund of·the county." Emphasis supplied.

In contrast to the above statutory provisions relating to permanent severance of parental rights, we find 38-817 which governs the procedure when a petition is filed to declare a child deprived. The statute directs that summons be issued to the child and the parent to give notice of the time and place of such hearing.

"Such *notice and summons* . . . shall include a statement *advising such child and the parent* . . . *of the right to retain counsel of their own choosing but that upon the failure to retain counsel* and notify said court of the name and address of such counsel . . . *the court will forthwith appoint counsel for such child* and the cost of appointed counsel may be assessed to the parent." 38-817(*a*). Emphasis supplied.

Nothing is said in the latter statute, about appointing counsel for indigent parents. However, the fact the legislature failed to provide for appointment of counsel for the parent in a "deprived child" hearing does not foreclose a need for such an appointment under the due process requirements of the Constitutions. We will return to the due process question later, but first we will consider some of the fears expressed by the district attorney about the Court of Appeals opinion.

The district attorney first argues that the decision is so broad as to require appointment of counsel for indigent parents in all juvenile cases involving temporary removal of the child from the parent, including adjudications that the child is delinquent, miscreant, or wayward, and when the parent voluntarily requests the State's assistance. Petitioner further argues that the requirement of appointed counsel for indigent parents usurps the State's parens patriae powers which are in the interests of the child.

The argument that the decision extends the right to court-appointed counsel for indigent parents in all juvenile proceedings involving potential temporary change of custody is without merit

and contrary to logic. First, the Court of Appeals made no reference to other juvenile proceedings, and there is no reason to assume that it intended to include them in its determination. This court does not.

Second, the statutes treat the dispositions on change of custody in deprived child cases separately from change of custody of children adjudged delinquent, miscreant, or wayward. Deprived children are dealt with in 38-824. Temporary change of custody is treated under subsection (b), and permanent severance of parental rights is treated under subsection (c). Change of custody of children adjudged delinquent, miscreant, or wayward is treated under 38-826.

Third, a child who has been declared delinquent, miscreant, or wayward is responsible for the misconduct precipitating the change of custody (see K.S.A. 1980 Supp. 38-802[b], [c], and [d]) but the classification of a child as "deprived" (formerly dependent and neglected) connotes parental misconduct or breach of duty. *In re Bachelor,* 211 Kan. 879, 883, 508 P.2d 862 (1973); *In re Vallimont,* 182 Kan. 334, 339, 321 P.2d 190 (1958).

Fourth, the interests affected differ under the various classifications. In deprived child cases, the State possesses its parens patriae interest in protecting its minor children and providing them with proper care. *State ex rel. O'Sullivan v. Heart Ministries, Inc.,* 227 Kan. 244, 253, 607 P.2d 1102 (1980). The parents' interest is in the maintenance of the integrity of the family unit (*Beebe v. Chavez,* 226 Kan. 591, 597, 602 P.2d 1279 [1979]), and the preservation of the parent-child relationship (*In re Brehm,* 3 Kan. App. 2d at 327-28). In deprived child proceedings, the parent is subjected to the possibilities of temporary or permanent deprivation of the custody of the child and destruction of the family unit.

Conversely, cases involving delinquent, miscreant, or wayward children do not involve the possibility of severance of parental rights. In the latter cases, the State has an interest in protecting its citizenry from juvenile misconduct in addition to its interest in providing the child with the proper care and guidance. *State, ex rel., v. Owens,* 197 Kan. 212, 220, 416 P.2d 259 (1966). See also *In Interest of D. B.,* 385 So.2d 83, 90 (Fla. 1980), where it is recognized that juvenile dependency and delinquency proceedings have distinct and separate purposes in the State of Florida.

There is no danger that the right to counsel to preserve parental custody will be extended to indigent parents in divorce proceedings, as is suggested by the district attorney. In child custody contests between divorcing parents, each parent has equal claim to custody. *Allison v. Allison,* 188 Kan. 593, 597, 363 P.2d 795 (1961); *Moyer v. Moyer,* 171 Kan. 495, 497, 233 P.2d 711 (1951). Such contests are distinguishable from deprived child cases where the State seeks custody, contrary to the parents' natural and presumptive right of custody. *In re Kailer,* 123 Kan. 229, 231, 255 Pac. 41 (1927). Unlike deprived child proceedings which are instituted by the State, child custody contests involve private litigants. Since no state action is involved in a divorce action, compliance with procedural due process requirements is not suspect. *Meyer v. Meyer,* 414 A.2d 236, 238 (Me. 1980).

Petitioner's argument that the extension of the right to counsel in deprived child proceedings involving only temporary deprivation of parental custody usurps the State's parens patriae powers is also without merit. Petitioner contends that the protection of the parents' rights contradicts the State's obligation to consider the child's best interests in the exercise of its parens patriae powers.

This court has long recognized the State's interest in protecting its children and assuring they receive proper care. *State ex rel. O'Sullivan v. Heart Ministries, Inc.,* 227 Kan. at 253; *Murphy v. Murphy,* 196 Kan. 118, 122, 410 P.2d 252 (1966). In the State's exercise of its parens patriae powers, the child's best interests are always the paramount consideration. *In re Nelson,* 216 Kan. 271, 276, 531 P.2d 48 (1975); *In re Wheeler,* 3 Kan. App. 2d 701, 703, 601 P.2d 15, *rev. denied* 227 Kan. 927 (1979). The parents' rights cannot be disregarded, however, and the child's best interests may be considered in conjunction with the parents' rights. *In re Armentrout,* 207 Kan. 366, 370, 485 P.2d 183 (1971); *Lennon v. State,* 193 Kan. 685, 691, 396 P.2d 290 (1964). The parents' rights are subordinate to the State's parens patriae powers and must yield when adverse to the best interests of the child. *State v. Garber,* 197 Kan. 567, 572, 419 P.2d 896 (1966); *Lennon v. State,* 193 Kan. at 691. It is presumed that the best interests of the child are served by the retention of the child's custody in the natural parents. *In re Armentrout,* 207 Kan. 366. Judicial recognition and legal representation of a parent's interests in a child-deprivation

proceeding does not, therefore, usurp the State's parens patriae powers.

The next point raised in the Petition for Review is that the Court of Appeals erroneously based its opinion on the assumption that a proceeding to adjudge a child deprived is "usually a prelude to a termination proceeding." This statement may have been too broad. However, as the Court of Appeals opinion notes, under 38-824, the adjudication that a child is deprived is a prerequisite to a proceeding to sever or terminate parental rights. This court has found that parental misconduct sufficient to justify a finding that a child is deprived also may be sufficient to support a finding that the parent is unfit in a severance proceeding. *In re Bachelor,* 211 Kan. 879; *In re Armentrout,* 207 Kan. 366. Under our statutory scheme, there are no assurances that a determination that a child is deprived will not later be used to support a decree to permanently sever parental rights, if the parents were afforded due process rights at the initial hearing. Indeed, in the present case, the journal entry contains an admonition to respondent that such proceedings would be initiated if the mother did not improve her conduct. The determination that the child is deprived and the evidence underlying that determination under certain circumstances may not be admissible against the parents in a severance proceeding, if the parents were not afforded due process rights. The parents' representation by counsel at a termination proceeding will not alone satisfy due process or equal protection requirements if the trial court relies on evidence introduced at a deprived proceeding at which the indigent parent had not been afforded counsel. A proceeding to determine whether a child is deprived, as the Court of Appeals concluded, may be a "critical stage" in the ultimate determination of the parents' rights in a severance proceeding. The potential impact of the "deprived hearing" on the parents' rights should be considered by the court in assessing the extent and nature of the parents' interest in the proceeding, and the extent of the due process requirements necessary to protect the interest.

Petitioner finally argues that the Court of Appeals erred in concluding that the parents' interest in continued and uninterrupted custody of the child is so great as to always require the assistance of counsel in proceedings which have for their purpose the temporary removal of the child from the home. Acknowledg-

ing the parents' interest in the custody and control of the child, petitioner argues that a *temporary* deprivation of custody does not require court appointment of counsel to represent the indigent parent.

As previously pointed out 38-820 requires that the parents be represented by counsel in an action for the severance of their parental rights. *In re Brehm,* 3 Kan. App. 2d 325. Due process also requires the assistance of counsel in an appeal from a severance proceeding where the parent is unable to afford an attorney; in such cases one must be court appointed.

It is universally held that constitutional due process requires the assistance of counsel in severance proceedings. The same is not true of proceedings for temporary removal of children from the family for care, treatment and assistance. Virtually all jurisdictions including Kansas recognize the parents' rights of custody and control of their children are liberty interests protected by the Fourteenth Amendment Due Process Clause. *Danforth v. State Department of Health & Welfare,* 303 A.2d 794 (Me. 1973), illustrates the rationale:

"While the precise question . . . has never been squarely decided by the Supreme Court of the United States, there has been ample suggestion by that Court that the right to raise one's children is of constitutional dimension.

"Over a half a century ago Mr. Justice McReynolds, speaking for the court in Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1922), said:

" 'The problem for our determination is whether the statute as construed and applied unreasonably infringes the liberty guaranteed to the plaintiff in error by the Fourteenth Amendment. "No State shall . . . deprive any person of life, liberty, or property without due process of law."

" 'While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, *to marry, establish a home and bring up children,* to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.' (Emphasis supplied) 262 U.S. at 399, 43 S.Ct. at 626.

"Later in Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1924), the Court restated its view that there is a constitutionally protected right of parents to bring up their children when it said:

" 'The fundamental theory of liberty upon which all governments in the Union repose excludes any general power of the state to standardize its children by forcing them to accept instruction from public teachers only.' 268 U.S. at 535, 45 S.Ct. at 573." 303 A.2d at 796.

The extent of the parents' interest in the continued and uninterrupted custody of the child, and the due process requirements necessary to protect that interest, vary from jurisdiction to jurisdiction. In *In re Cager*, 251 Md. 473, 248 A.2d 384 (1967), for example, the court found no due process violation from denying the indigent mother appointed counsel where the child was represented by a guardian ad litem, and the mother was given notice and the opportunity to be heard at the dependency and neglect proceedings. This case appears to stand alone for we find no other similar holdings.

Several jurisdictions have required as minimum due process requirements the appointment of counsel for indigent parents in every dependency and neglect proceeding when the child may be temporarily removed from the home. The parent was faced with the potential loss of the child's society as well as the possibility of criminal charges in *Matter of Ella B.*, 30 N.Y.2d 352, 334 N.Y.S.2d 133 (1972). Noting the "gross imbalance" of expertise between the state and unrepresented parent, the court held that denial of counsel to an indigent parent violated both due process and equal protection. The procedural defect was not cured in that case even though the parent was represented at a subsequent termination proceeding, because evidence from the previous dependency and neglect proceeding was considered and relied upon.

However, the United States Supreme Court recently held the Constitution of the United States does not require the appointment of counsel for indigent parents in every parental status termination proceeding. *Lassiter v. Department of Social Services*, 452 U.S. 18, 68 L.Ed.2d 640, 101 S.Ct. 2153 (1981).

In *Danforth v. State Department of Health and Welfare*, 303 A.2d 794, the court held neglect proceedings to be akin to criminal proceedings in the impact upon the parent, noting that due process requires greater procedural protection as the action more nearly approximates a criminal prosecution. The *Danforth* court was also concerned about the imbalance of expertise, and required the appointment of counsel for indigent parents when the child was being temporarily removed from the home.

Other jurisdictions follow a middle road and require appointment of counsel for indigent parents in dependency and neglect

proceedings where there is a reasonable possibility that parental rights will be terminated or there will be a prolonged separation between the parent and child. In *Davis v. Page,* 442 F. Supp. 258 (S.D. Fla. 1977), the court used the same rationale used in *Danforth,* expressing concern for the quasi-criminal nature of the proceeding, and the superiority of the State's investigative and trial abilities. The Fifth Circuit approved the rationale in 618 F.2d 374 (5th Cir. 1980). Accord, *Brown v. Guy,* 476 F. Supp. 771 (D. Nev. 1979). However, the Supreme Court of Florida later modified *Davis,* and held that counsel would not be required in situations where the taking of the child was temporary and for a short period of separation. *In Interest of D. B.,* 385 So. 2d 83. The Florida court chose to adopt the case-by-case analysis discussed in *Cleaver v. Wilcox,* 499 F.2d 940 (9th Cir. 1974).

In *Cleaver,* the court noted the complexity of some neglect proceedings, expressing concern for the parents' ability to understand. The *Cleaver* court weighed the potential interests involved, and held that the parent's right of custody may outweigh the State's financial costs in providing counsel to all indigent parents. Though a parent in such proceedings may be faced with possible severance of parental rights and with the possibility of criminal prosecution, the court felt it unnecessary to require blanket application of the appointed-counsel requirement. The court set out some guidelines to be applied on a case-by-case basis. See also *In the Matter of M.D.Y.R.,* 177 Mont. 521, 582 P.2d 758 (1978), in which that court found no due process violation where the facts revealed the mother had not opposed the temporary change of custody.

Courts which travel this middle road are troubled primarily by (1) the possibility that evidence upon which the adjudication of the child as deprived will eventually be used to support permanent severance of the parents' rights to custody; and (2) potential criminal liability resulting therefrom. These same problem areas exist under Kansas law. Once a child is found to be deprived as defined in K.S.A. 1980 Supp. 38-802(*g*)(1), the State may institute proceedings to terminate parental rights under K.S.A. 1980 Supp. 38-824(*c*). There also exists the possibility of criminal prosecution resulting from the determination, or evidence adduced at the proceeding. See, *e.g.,* K.S.A. 1980 Supp. 21-3605 (nonsupport of

child); K.S.A. 21-3604 (abandonment of child); K.S.A. 21-3608 (endangering a child); and K.S.A. 21-3609 (abuse of child).

In interpreting the due process clause of the Constitution, the United States Supreme Court has established that certain interests cannot be foreclosed without meeting certain procedural safeguards. A determination of the safeguards necessary to afford constitutional due process must be evaluated in the light of the nature of the proceeding and of the interests affected. *Mathews v. Eldridge,* 424 U.S. 319, 334-35, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976).

The extent to which procedural due process must be afforded a person is influenced by the extent to which the person affected may be "condemned to suffer grievous loss" and depends upon whether the person's interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Goldberg v. Kelly,* 397 U.S. 254, 262-63, 25 L.Ed.2d 287, 90 S.Ct. 1011 (1970).

In 1980 there were 2,206 deprived child hearings in Kansas, many of which had for their purpose a temporary change of custody to provide for special care and treatment of the child and training of the parent or parents to develop the proper skills to enable the parents to care for the child in the home. In these cases we see no due process requirement necessitating the appointment of counsel for indigent parents at the expense of the county. Counsel is required by statute to be appointed for the *child.* In some cases the interests of the parent and the child may be protected by counsel appointed for the child.

At the outset of every deprived child proceeding the court should require the State to make an opening statement outlining the evidence which the State expects to introduce in support of the petition, and making suggestions as to recommended solutions for those problems which the State believes necessary and in the best interests of the child. In any case where the conditions outlined prior to the hearing appear to be serious and have remained so for a considerable time counsel should be appointed for the indigent parent or parents. In such cases if no attorney is appointed for the parents any evidence introduced at the deprived child hearing may well be inadmissible in a later severance hearing. Without an attorney to represent the parents, the evidence would be taken in violation of the due process rights of the parents.

In some deprived child hearings the parent or parents involved

may voluntarily waive their rights to appointed counsel after being fully advised of their rights. Such waiver should be entered on the record of the proceedings and, in such case, violation of due process rights could not successfully be raised later when the evidence at the deprived child hearing is used to support a petition to sever parental rights.

Some additional factors to be considered in determining whether or not an attorney should be appointed to represent indigent parents in a deprived child hearing might well include: (1) length of anticipated separation the parents may face, (2) the presence or absence of parental consent to State assistance, (3) the presence or absence of disputed facts, (4) the parents' ability to cope with relevant documents and to question the State's witnesses at the hearing.

In any case when the parents request an attorney, a record should be made of their financial circumstances bearing on indigency, and if the judge should refuse the request for counsel it is important that grounds for the refusal be stated in the record so a meaningful judicial review of the refusal can be had.

In the present case no grievous loss was visited upon Marilyn Dickey. Although the court did not ascertain whether she was indigent or desired to have counsel appointed for her at State expense, she was advised that she had a right to counsel and she declined counsel. An attorney was appointed for the child and both the attorney and the mother questioned the witnesses. The length of the separation faced was not anticipated to be long and depended in large part on the cooperation of the parents in attending the parent training courses and in receiving psychiatric examination and psychological testing. As expressed in the journal entry the goal was to reunite the child with her mother and stepfather. It appears the parents consented to the course of treatment and education outlined by the court. At the hearing the facts were somewhat in dispute; however, the mother appeared to have the ability to understand and cope with relevant documents and she was quite logical and coherent in questioning the witnesses, and in testifying. No permanent severance of parental rights has been attempted and the custody of the child has been restored to the parents.

Constitutional due process requires the State to appoint counsel for an indigent parent in a deprived child hearing under

K.S.A. 1980 Supp. 38-817 whenever the parent, unable to present his or her case properly, faces a substantial possibility of loss of custody and permanent severance of parental rights or of prolonged separation from the child. *Cleaver v. Wilcox,* 499 F.2d 940.

In deprived child hearings the district court should safeguard the due process rights of an indigent parent and have counsel appointed at the expense of the county when the circumstances appear to require it and, should a request for counsel be refused, grounds for such refusal shall be stated in the record so that a meaningful judicial review can be had.

Under the facts and circumstances of the present case the parent was able to present her case properly, had the assistance of an attorney appointed for the child, and there was no substantial possibility of permanent severance or of prolonged separation of the child from the parent. The due process rights of Marilyn Dickey were adequately protected. The decision of the Court of Appeals is reversed and the judgment of the district court is affirmed.

McFARLAND, J., dissenting: The Court of Appeals decision in this case (5 Kan. App. 2d 584) unequivocally states:

"Where proceedings are brought for an adjudication that a child is deprived, due process requires that the parent or parents, if indigent, must have counsel appointed to represent them at a deprived child hearing." Syl. ¶ 4.

The majority opinion of this court, in ostensibly reversing said opinion, holds:

"Constitutional due process requires the State to appoint counsel for an indigent parent in a deprived child hearing under K.S.A. 1980 Supp. 38-817 whenever the parent, unable to present his or her case properly, faces a substantial possibility of loss of custody and permanent severance of parental rights or of prolonged separation from the child." Syl. ¶ 4.

This syllabus appears to dilute or condition the absolute pronouncement of the intermediate appellate court, but knowledge of juvenile court proceedings and careful reading of the opinion reveals both decisions have the same practical result—judges presiding over deprived child proceedings will feel compelled to appoint counsel for parents in all such proceedings. Deprived child proceedings are seldom "one shot" actions. Occasionally, there is a case such as a factual situation involving a badly injured

child *and* witnesses to testify they saw the parents intentionally injure the child—but this is the exception. Generally, severance cases are cumulative with nonseverance deprived child cases.

A more common scenario is the following: (1) An SRS social worker sees a child who is not advancing physically or mentally; (2) the social worker counsels parents on how to care for the child, but time passes and the child does not improve; (3) the social worker turns the matter over to the court and the child is placed in foster care while the court investigates; (4) the court ultimately finds the child deprived and a program is set up for parental counseling, psychiatric treatment, etc., in order for the parents to again have the child; (5) the child improves in foster care—is now walking, speaking, and toilet trained; (6) the child is returned to parents; (7) the social worker notices the child's progress has stopped and disintegration has set in—after a while the child is no longer speaking, walking, or toilet trained; (8) the child is put back in foster care where it dramatically improves, and parents are counseled; (9) the child is returned to parents where it again disintegrates; (10) the child is put back in foster care where it rapidly improves; (11) severance proceedings are commenced and an attorney is appointed for parents; (12) at the trial, of necessity, virtually all the evidence consists of the parents' past failures and their effect on the child; and (13) severance is granted on the previously established facts and the realistic future prognosis.

The majority opinion herein states:

"Under our statutory scheme, there are no assurances that a determination that a child is deprived will not later be used to support a decree to permanently sever parental rights, if the parents were afforded due process rights at the initial hearing. Indeed, in the present case, the journal entry contains an admonition to respondent that such proceedings would be initiated if the mother did not improve her conduct. The determination that the child is deprived and the evidence underlying that determination under certain circumstances may not be admissible against the parents in a severance proceeding, if the parents were not afforded due process rights. The parents' representation by counsel at a termination proceeding will not alone satisfy due process or equal protection requirements if the trial court relies on evidence introduced at a deprived proceeding at which the indigent parent had not been afforded counsel. A proceeding to determine whether a child is deprived, as the Court of Appeals concluded, may be a 'critical stage' in the ultimate determination of the parents' rights in a severance proceeding. The potential impact of the 'deprived hearing' on the parents' rights should be considered by the court in assessing the extent and nature of the

parents' interest in the proceeding, and the extent of the due process requirements necessary to protect the interest."

What message does the majority opinion send to juvenile court judges? Appoint counsel in all deprived child cases in order to be sure children will not suffer later from your failure to do so.

K.S.A. 1980 Supp. 38-820 requires the appointment of counsel in deprived child cases if severance is sought. No statutory requirement exists for the appointment of counsel in deprived child cases where severance is not sought. Unless some constitutional provision requires the appointment of counsel in such cases, any change is a matter of policy to be determined by the legislature. The majority based its modifications of the statutory law on the due process clause of the United States Constitution, as did the Court of Appeals.

The interpretation placed on the Constitution and laws of the United States by the decisions of the Supreme Court of the United States is controlling upon state courts and must be followed. *Murray v. State,* 226 Kan. 26, Syl. ¶ 1, 596 P.2d 805 (1979). The United States Supreme Court has recently spoken on the issue before us in *Lassiter v. Department of Social Services,* 452 U.S. 18, 68 L.Ed.2d 640, 101 S. Ct. 2153 (1981). In *Lassiter* the mother's parental rights were terminated (comparable to a severence proceeding), while she was not represented by counsel. Bear in mind that Kansas by statute requires appointment of counsel in termination proceedings and that we are concerned in this case with appointment of counsel in a nonseverance deprived child proceeding.

The rationale of the *Lassiter* court was as follows:

"In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured.

"The case of *Mathews v. Eldridge,* 424 U.S. 319, 335, propounds three elements to be evaluated in deciding what due process requires, viz., the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." (pp. 26-27.)

The court went on to discuss the various elements in consider-

able detail, noting that in termination proceedings the State has sought not simply to infringe upon interest (parental interest in the child), but to end it. The *Lassiter* opinion is lengthy and may be summarized as follows:

(1) The due process clause does not establish an absolute right to the appointment of counsel for representation of indigent parents who are parties to termination proceedings;

(2) In a particular case where complex expert medical or psychiatric testimony is introduced and the parents are severely handicapped in their ability to comprehend same, due process might require appointment of counsel; and

(3) Absent such a unique combination of circumstances, appointment of counsel in termination cases is a matter of legislative policy and not constitutionally mandated.

The *Lassiter* court noted in its conclusion:

"In its Fourteenth Amendment, our Constitution imposes on the States the standards necessary to ensure that judicial proceedings are fundamentally fair. A wise public policy, however, may require that higher standards be adopted than those minimally tolerable under the Constitution. Informed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but in dependency and neglect proceedings as well. [Citations omitted.] Most significantly, 33 States and the District of Columbia provide statutorily for the appointment of counsel in termination cases. The Court's opinion today in no way implies that the standards increasingly urged by informed public opinion and now widely followed by the States are other than enlightened and wise." (pp. 33-34)

It follows that even in the strongest case the "net weight" of considerations affecting appointment of counsel for indigent parents in deprived nonseverance proceedings would not "tip the scales" against the presumption of appointed counsel.

The issue of whether counsel should be appointed for indigent parents in deprived child nonseverance cases is unquestionably a matter of policy to be determined by the legislature—not a constitutional requirement to be engrafted upon our law by judicial fiat.

The majority's incorrect decision has enormous potential for harm. It affects severance cases to be tried in the future, which are based on old nonseverance deprived child facts. Perhaps even more importantly, it casts long shadows of invalidity on many closed severance cases and their resulting adoptions.

I would reverse the Court of Appeals and hold there is no

constitutional right for appointment of counsel in nonseverance deprived child cases.

In closing, it is noted that appointment of a guardian ad litem for the juvenile in juvenile court proceedings is mandatory by statute in Kansas. Such an attorney is independent of the prosecutor and is charged with protecting the child's interest in the proceedings. This provides an additional safeguard against error.

SCHROEDER, C.J. and MILLER, J., join the foregoing dissenting opinion.

SCHROEDER, C.J., dissenting: I fully join in the dissenting opinion written by Justice McFarland, but feel duty bound to call attention to difficult problems of interpretation and implementation of the court's opinion and the havoc this opinion will cause in deprived child cases from the past where severance of parental rights has not been sought by the State.

The sole issue determined by the court in this case is whether in "deprived child" hearings where the State in the exercise of its parental power seeks to give care, guidance, and discipline such as will best serve the child's welfare and where there may be a *temporary loss of custody* by the parents, it is necessary that the natural parent or parents be represented by court-appointed counsel at the expense of the county when the parent or parents are financially unable to employ counsel.

There is no due process requirement under the Constitution of the United States as interpreted by the United States Supreme Court, under the Kansas Constitution, nor under the Kansas Juvenile Code that counsel be appointed for the indigent parent or parents under these circumstances.

By reversing the Court of Appeals the majority opinion attempts to straddle the fence and have it both ways—yes, appoint counsel in some cases, but no, do not appoint counsel in other cases. The majority opinion states:

"In 1980 there were 2,206 deprived child hearings in Kansas, many of which had for their purpose a temporary change of custody to provide for special care and treatment of the child and training of the parent or parents to develop the proper skills to enable the parents to care for the child in the home. In these cases we see no due process requirement necessitating the appointment of counsel for indigent parents at the expense of the county."

Many of these were "deprived child" hearings where temporary

change of custody was sought by the State, but the trial judges of the State are now admonished to determine *prior to the hearing* of such cases whether counsel should be appointed for the indigent parent or parents. The court states:

"In any case when the parents request an attorney, a record should be made of their financial circumstances bearing on indigency, and if the judge should refuse the request for counsel it is important that grounds for the refusal be stated in the record so a meaningful judicial review of the refusal can be had."

Our appellate courts on review of the trial court's determination, which was made prior to hearing any evidence in the case, will review the transcript of the evidence taken at the trial. In other words, the appellate court will use hindsight to determine the crucial constitutional issue. Obviously, the trial judge should not be put in the position of deciding this crucial issue on the basis of evidence yet to be heard and in light of standards which give no definitive guidance. The net result will be that the trial judge, to be on the safe side in making the determination, will appoint counsel for the indigent parent or parents at the expense of the taxpayer in nearly every case where temporary custody is sought by the State in a "deprived child" hearing.

Related to the dilemma of the trial court in appointing counsel in future deprived child hearings is the effect of this opinion on decisions not to appoint counsel in past hearings. By raising to constitutional dimensions under the due process clause of the United States Constitution the requirement for the appointment of counsel to represent the indigent parent or parents in deprived child cases where the State seeks only temporary custody, the validity of many adoptions in Kansas, long considered to be final, is placed in jeopardy. A collateral attack can now be made to overturn an adoption heretofore considered final on the ground that the trial court had no jurisdiction to sever the parental rights in the first place because of violation of that parent's due process rights enunciated by the court today. The issue in the collateral attack will be indigency of the parent or parents in the original deprived child hearing where only temporary custody was sought by the State. If the appellate court perceives an error in failure to appoint counsel, that error will render evidence presented in the prior proceeding inadmissible in future proceedings.

In my opinion the court's decision is founded upon an erroneous premise which is stated by the court as follows: "[A]ny

evidence introduced at the deprived child hearing may well be inadmissible in a later severance hearing."

It is submitted where severance of parental rights is sought in a deprived child hearing all relevant evidence is admissible, whether there has previously been a hearing to take temporary custody of the children by the State or not. The appointment of an attorney to represent the indigent parent or parents at the severance hearings, as required by our statute K.S.A. 1980 Supp. 38-820, satisfies the due process constitutional requirement addressed by the court in this case.

Any decision of this court imposing a due process requirement of counsel in a deprived child hearing and exclusion of evidence in later severance proceedings because of alleged violation of due process would permit unfit parents to abuse their children without recourse by the State to protect the children.

This proposed exclusion of evidence in a later proceeding goes farther than necessary. If, in a hearing where *permanent severance* of parental rights is sought, the parents are indigent and no attorney is appointed to represent them as required by 38-820, what order would the court enter in reversing judgment? It is submitted the order would be precisely as the order of the Court of Appeals is worded in this case of *In re Cooper,* 5 Kan. App. 2d 584, 592, 621 P.2d 437 (1980). It reads:

"The judgment is remanded with directions that the trial court determine whether appellant was indigent at the time of the 'deprived child' hearing. If it is determined that appellant was indigent at that time, then the trial court's judgment herein is reversed and the trial court is directed to appoint an attorney for appellant and to grant her a new trial to determine whether Julie Cooper is a deprived child."

Finally, I cannot reconcile the court's statement of the law with its disposition of this case. It is inconceivable to me that the court can arbitrarily find there was no requirement to appoint counsel for Marilyn Dickey, the appellant, in this case and affirm the trial court on the basis of the law as stated in the court's opinion and the facts in this case. If ever a case existed where severance of parental rights loomed in the offing, this is the case.

Prior to January 1979, police assigned to the child abuse division assisted social workers in making calls at the second floor apartment of Marilyn Dickey and Roy Dickey concerning the well-being of their two children, Joseph Dickey, age four months, and Julie Cooper, age eighteen months, following re-

ports that the children were being left in the apartment alone at night. Those reports proved well-founded and symptomatic of a disintegrating family unit. The professionals discovered the two undernourished children living in generally unsanitary conditions. On January 1, 1979, the infant Joseph died. At the later deprived child hearing regarding the girl Julie, the deputy coroner who performed the autopsy on Joseph's body testified Joseph suffered multiple bruises and was severely undernourished, the prolonged malnutrition being one of the causes of death.

After hearing the testimony of police, social workers, the deputy coroner, and Marilyn Dickey, the trial judge terminated the hearing saying he had heard enough evidence. Note, the State was merely seeking to take temporary custody of the remaining child, Julie Cooper. The order of the trial court reads:

"The Court would urge Mr. and Mrs. Dickey to cooperate with the professional persons with a goal of reuniting Julie with her mother and step-father. The Court, however, does caution that if Mr. and Mrs. Dickey should choose to continue their chaotic lifestyle, over the next several months, and fail to cooperate with the Department of SRS, and should the Court have evidence presented of illegal drug involvement in the Dickey home, the Court would recommend that the State file a petition requesting the Court to sever permanently parental rights in Julie Cooper."

It is respectfully submitted the court should not require appointment of counsel to represent a parent or parents where only temporary deprivation of custody is sought by the State in a deprived child hearing, and the judgment of the trial court should be affirmed.

MILLER and McFARLAND, JJ., join the foregoing dissenting opinion.