15 Kan. App. 2d 415 (1991)
809 P.2d 1
IN THE INTEREST OF S.R.H., a minor.
No. 64,935
Court of Appeals of Kansas.
Opinion filed April 5, 1991.
Darrel G. Shumake, of Columbus, for the appellant.
Jerry R. Wilson, assistant county attorney, for the appellee.
Before BRAZIL, P.J., DAVIS and GERNON, JJ.
*416 DAVIS, J.:
This is an appeal by the natural mother from the district court's termination of her parental rights to S.R.H., a minor male child. We reverse and remand based upon our consideration of the first assignment of error raised by the natural mother: whether "[t]he district court denied [natural mother] her constitutional rights of due process of law by failing to appoint an attorney to represent her at all critical stages of the proceedings."
Highly summarized, the facts are that the police were called to investigate a family disturbance at the home where the natural mother and her boyfriend were staying. Because the natural mother had been beaten by her boyfriend's brother, an ambulance was called to transport her to the hospital. Based on an investigation conducted by the police department on October 19, 1987, and in conjunction with SRS protective service worker Sherry Snyder, the minor child, S.R.H. (date of birth 8-24-85), was placed in protective custody because the social worker did not feel the child could receive proper care in that environment.
On October 26, 1987, a child in need of care petition was filed. On November 12, 1987, at a hearing on the child in need of care petition, S.R.H. was adjudicated as a child in need of care and continued in foster care, with a review hearing scheduled to be held by the court on February 5, 1988. The record on appeal contains only the journal entry of the hearing on November 12, 1987. After checking with the district court, we are satisfied that the child in need of care adjudication hearing was not transcribed. The journal entry reflects the following appearances: "C.Y. Meek, Cherokee County Attorney; Juvenile by Larry A. Prauser, his guardian ad litem; the mother in person; there were no other appearances." Evidence in the subsequent severance hearing indicates that the natural mother, consistent with SRS' request, was to complete an in-patient drug and alcohol abuse treatment program and obtain a comprehensive psychological evaluation. The journal entry terminating parental rights filed January 30, 1990, reflecting a hearing on August 23-24, 1989, indicates that a review hearing was held on February 11, 1988, and it was ordered that the child should remain in the custody of social and rehabilitation services. The journal entry further indicates that a *417 motion for termination of parental rights was filed on February 11, 1988. Other than this entry in the record indicating a review hearing was held on February 11, 1988, there is no transcript of the February 11 hearing in the record.
The record does not contain a formal reintegration plan but the court notes in its order severing parental rights that in November of 1987, a reintegration plan was adopted which contemplated the completion of in-patient drug and alcohol abuse treatment and a complete psychological evaluation by the natural mother. The severance hearing notes that this was never completed by the natural mother.
On February 11, 1988, a notice of hearing was filed with the court and served personally upon the natural mother. The notice provided as follows:
"A petition has been filed in the court requesting that the court find S.R.H. a Child in Need of Care.
"You are required to appear before this court at the Courthouse, Columbus, Kansas, on March 3rd, 1988, at 1 o'clock P.M. or prior to that time file your written response to the pleading with the clerk of this court. If, after the child has been adjudicated to be a child in need of care, the court finds a parent or parents to be unfit, the court may make an order permanently terminating the parent's or parents' parental rights."
"Larry A. Prauser, an attorney, has been appointed as guardian ad litem for the child. Each parent or other legal guardian of the child has the right to appear and be heard personally either with or without an attorney. The court will appoint an attorney for a parent who is financially unable to hire one.
 Clerk of the Court
 by /s/ Martha L. Rooney"
The notice published in the Columbus Daily Advocate contained the same information. Obviously, notice was defective in that it notified all parties and published on the basis that there was a petition filed for declaration and adjudication of S.R.H. to be declared a child in need of care. The motion filed February 11, was a motion requesting termination of parental rights. A child in need of care adjudication had previously been made on November 12, 1987.
The mother requested a continuance of the hearing which was granted by the court and set for March 24, 1988, at 1:00 p.m. The first indication in the record that the natural mother is represented *418 by an attorney is March 31, 1988, four months after S.R.H. was adjudicated a child in need of care. On that date, there appears in the record a motion to produce documents filed by John W. Fink, who designates himself as attorney for the natural mother.
The next entry concerning counsel is an order appointing counsel for the natural parents dated November 4, 1988. This order was entered on petition of the county attorney for appointment of counsel for the natural mother. Alois R. Bieber was appointed counsel to represent and defend said natural parents in this proceeding. Mr. Bieber continued representing the interest of the natural mother from the date of his court appointment on November 4, 1988, through severance, at which time he was allowed to withdraw as counsel of record. On February 14, 1990, Mr. Darrell Shumake was appointed as attorney to represent the natural mother on the appeal. In the order appointing counsel on appeal, the court finds that the natural mother is an indigent under Rule 2.04(b) (1990 Kan. Ct. R. Annot. 7); that the appeal should be docketed in forma pauperis and the filing fee should be waived; and that the natural mother's attorney fees and cost of the transcript should be assessed against the county general fund pursuant to K.S.A. 38-1685.
Before addressing the assigned error, we note that none of the parties focus upon the defective notice in the severance of parental rights case. Because of our disposition of this appeal, we do not address the question. It appears that all parties proceeded on the basis that a severance hearing was to be held even though the notices given all relate to a hearing for a child in need of care adjudication.
Whether the district court denied appellant her constitutional rights of due process of law by failing to appoint an attorney to represent her at all critical stages of the proceedings.
In response to the natural mother's argument that she was denied counsel, the State argues that she chose to proceed with the hearing on the merits of the child in need of care petition without the benefit of counsel. K.S.A. 38-1505(b) provides that "[i]f at any stage of the proceeding a parent desires but is financially unable to employ an attorney, the court shall appoint an attorney for the parent." The State contends that the statute *419 requires the appointment of an attorney only upon request of the indigent parent. Specifically, the State contends that the mother did not make such a request, despite the fact she was served with a summons apprising her of her right to counsel. Thus, according to the State, the natural mother waived her right to counsel.
We acknowledge that the statute relied upon by the State appears to require that a natural parent request the appointment of counsel before the statute operates. However, for the reasons set forth below, we do not think that the constitutional rights of due process of this natural mother depend entirely upon her request for counsel.
We note that this situation is not too much different from that presented to the court in the case of In re Cooper, 230 Kan. 57, 631 P.2d 632 (1981). This case, like Cooper, deals with a temporary deprivation of the right to the custody of the child.
As noted in Cooper:
"It is universally held that constitutional due process requires the assistance of counsel in severance proceedings. The same is not true of proceedings for temporary removal of children from the family for care, treatment and assistance. Virtually all jurisdictions including Kansas recognize the parents' rights of custody and control of their children are liberty interests protected by the Fourteenth Amendment Due Process Clause. [Citation omitted.]" Cooper, 230 Kan. at 64.
Because the courts recognize that the parents' rights of custody and control of their children are liberty interests protected by the Fourteenth Amendment Due Process Clause, the court noted that a determination of the safeguards necessary to afford constitutional due process with reference to a temporary deprivation of custody must be evaluated in light of the nature of the proceeding and of the interest affected. Thus, Cooper adopted a balancing of interests test in temporary deprivation cases:
"The extent to which procedural due process must be afforded a person is influenced by the extent to which the person affected may be `condemned to suffer grievous loss' and depends upon whether the person's interest in avoiding that loss outweighs the governmental interest in summary adjudication." In re Cooper, 230 Kan. 57, Syl. ¶ 3.
In addressing the question, Cooper deals with a determination as to whether the child was deprived under the provision of *420 K.S.A. 1980 Supp. 38-802(g). While there are differences between the old law and the Code for Care of Children, the similarity at least in this instance between Cooper and our case is that Cooper, like this case, deals with a temporary deprivation of the custody of a child. In that respect, a determination of whether the child is deprived is similar to a determination as to whether the child is to be adjudicated a child in need of care.
In Cooper, the statute relating to the procedure for finding a child deprived was set forth in K.S.A. 1980 Supp. 38-817, which governed the procedure when a petition is filed to declare a child deprived. The statute directed that summons be issued to the child and the parent to give notice of the time and place of hearing and further provided:
"Such notice and summons ... shall include a statement advising such child and the parent ... of the right to retain counsel of their own choosing but that upon the failure to retain counsel and notify the court of the name and address of such counsel . .. the court will forthwith appoint counsel for such child and the cost of appointed counsel may be assessed to the parent." K.S.A. 1980 Supp. 38-817(a).
The above language is contrasted with the present code for care of children, K.S.A. 38-1505(b), which provides in part:
"If at any stage of the proceeding a parent desires but is financially unable to employ an attorney, the court shall appoint an attorney for the parent. It shall not be necessary to appoint an attorney to represent a parent who fails or refuses to attend the hearing after having been properly served with summons in accordance with K.S.A. 38-1534 and amendments thereto. A parent or custodian who is not a minor, a mentally ill person as defined in K.S.A. 59-2902 and amendments thereto and a disabled person as defined in K.S.A. 59-3002 and amendments thereto may waive counsel either in writing or on the record."
Keeping in mind that the provisions of the statute in effect at the time Cooper was decided did not expressly provide for the appointment of counsel, Cooper nevertheless concluded:
"In deprived child hearings the district court should safeguard the due process rights of an indigent parent and have counsel appointed at the expense of the county when the circumstances appear to require it and, should a request for counsel be refused, grounds for such refusal shall be stated in the record so that a meaningful judicial review can be had." (Emphasis added.) 230 Kan. at 69.
Cooper further notes:

*421 "In some deprived child hearings the parent or parents involved may voluntarily waive their rights to appointed counsel after being fully advised of their rights. Such waiver should be entered on the record of the proceedings and, in such case, violation of due process rights could not successfully be raised later when the evidence at the deprived child hearing is used to support a petition to sever parental rights." (Emphasis added.) 230 Kan. at 67-68.
Employing the balancing test, the trial court must make a determination as to whether an indigent parent is entitled under the Due Process Clause of the United States Constitution to be represented by counsel in a deprived child hearing. Not unlike Cooper, we deal with a hearing that will determine whether a minor child is to be adjudicated a child in need of care. While such adjudication does not necessarily always lead to severance, clearly, under some circumstances, such adjudication may, in fact, lead to severance. Because such hearing at least raises the issue of whether the parent is entitled to the appointment of counsel under the Due Process Clause, the failure of the district court to inquire into this issue as required by Cooper requires us to reverse this case.
It is clear to us that Cooper requires the court to consider on the record the parent's representation by counsel in cases of temporary deprivation even though the statute then did not provide for appointment of counsel. Likewise, under the Code for Care of Children, Cooper remains good law. The right of an indigent parent to be represented by counsel in a hearing to determine whether the parent's minor child shall be adjudicated a child in need of care is not dependent upon a request by the parent to be represented by counsel. While the statute speaks in terms of a desire, it also speaks in terms of waiver on the record or in writing. The Cooper case, while not requiring the appointment of counsel in every case of temporary deprivation, certainly requires a court hearing a petition to declare a child in need of care to make an independent determination as to whether the parent should be represented by counsel in this proceeding.
"At the onset of every deprived child proceeding the court should require the State to make an opening statement outlining the evidence which the State expects to introduce in support of the petition, and making suggestions as to recommended solutions for those problems which the State believes necessary and in the best interest of the child. In any case where the *422 conditions outlined prior to the hearing appear to be serious and have remained so for a considerable time counsel should be appointed for the indigent parent or parents. In such cases if no attorney is appointed for the parents any evidence introduced at the deprived child hearing may well be inadmissible in a later severance hearing. Without an attorney to represent the parents, the evidence would be taken in violation of the due process rights of the parent." 230 Kan. at 67.
We hold this same procedure is required under the provisions of K.S.A. 38-1505(b).
In addition to the balancing test, Cooper sets forth those factors which a district judge must consider in determining whether to appoint counsel: "(1) length of anticipated separation the parents may face, (2) the presence or absence of parental consent to State assistance, (3) the presence or absence of disputed facts, (4) the parents' ability to cope with relevant documents and to question the State's witnesses at the hearing." 230 Kan. at 68.
The record in this case merely states by journal entry, dated November 12, 1987, that the mother appeared personally. Facts within the file indicated that the mother was receiving welfare in the form of ADC for the child, had been severely beaten by a brother of her boyfriend, was 20 years old, and had received only a 10th grade education. Under these circumstances, we hold that, under the provisions of K.S.A. 38-1505(b), the court was required to consider the balancing test and factors set forth in Cooper consistent with its duty to "safeguard the due process rights of an indigent parent" in deciding whether to appoint counsel for the mother even absent her request for appointed counsel.
Because the district court failed to do this and because we may not assume a waiver, we reverse and remand for further proceedings consistent with our decision.
Reversed and remanded.
BRAZIL, J., dissenting:
As noted by the majority, there is no transcript of the child in need of care hearing on November 12, 1987. Therefore we must assume that the evidence presented related to the allegations made in the petition.
The petition is a form pleading, and paragraph number two lists eight printed reasons why a child may be a child in need of care. Each reason has a box which allows the petitioner to *423 check the applicable reasons. In this case, box number two is checked, which states that S.R.H. is a child in need of care because he: "is without the care or control necessary for the child's physical mental or emotional health."
Paragraph number three sets out the specific facts upon which the petition is based and is typewritten, not printed. It states:
"The mother of said child was admitted to St. John's Hospital, Joplin, on 10-19 after being severly [sic] beaten. The child was left with the man who inflicted the injuries to child's mother, and with the mother of this man who did know [record later indicates this should have been `did not know'] the child's name or sex, after having had the child in her home for several days.
"Child is believed to be in imminent danger."
The summons reflects personal service upon the mother and includes the following warning:
"Failure to respond or to appear before the court at the time shown below will not prevent the court from entering judgment that the child is a child in need of care if it finds judgment should be granted and removing the child from the custody of parent, parents or any other present legal custodian until the further order of the court. If, after a child has been adjudged to be a child in need of care, the court finds a parent or parents to be unfit, the court may make an order permanently terminating the parents' rights.
"The attorney shown below, has been appointed as guardian ad litem for the child. Each parent or legal custodian has the right to appear and be heard personally either with or without an attorney. The court will appoint an attorney for any parent who is financially unable to hire one."
At the conclusion of the hearing, S.R.H. was found to be a child in need of care. Although not contained in the journal entry, a reintegration plan was adopted that contemplated the completion of in-patient drug and alcohol abuse treatment and a complete psychological evaluation by the mother.
The majority relies heavily upon In re Cooper, 230 Kan. 57, 631 P.2d 632 (1981), in concluding that the court committed reversible error in failing to either appoint counsel for the mother at the child in need of care hearing or make an adequate record that the mother had voluntarily waived counsel.
Admittedly, Cooper is the law in Kansas; however, it does not require the assistance of counsel in every proceeding involving the possible temporary removal of the child from the home. In *424 Cooper, the Court of Appeals had so held, but the Supreme Court, in reversing this court, held:
"In deprived child hearings the district court should safeguard the due process rights of an indigent parent and have counsel appointed at the expense of the county when the circumstances appear to require it and, should a request for counsel be refused, grounds for such refusal shall be stated in the record so that meaningful judicial review can be had." 230 Kan. at 69.
After reviewing the holdings in different jurisdictions, the court in Cooper adopted a middle road, which requires appointment of counsel for indigent parents where there is a reasonable possibility that parental rights will be terminated or there will be a prolonged separation between the parent and child. The court went on to find that, under the facts and circumstances, the due process rights of the mother were adequately protected and that there was no substantial possibility of permanent severance or of prolonged separation of the child from the parent.
From my reading of the Cooper opinion, it is apparent that the court adopted the "middle road" position because of its concern that parental misconduct sufficient to justify a finding that a child is deprived may also be used to support a finding that the parent is unfit in a severance hearing. "The parents' representation by counsel at a termination proceeding will not alone satisfy due process or equal protection requirements if the trial court relies on evidence introduced at a deprived [child] proceeding at which the indigent parent had not been afforded counsel." 230 Kan. at 63.
In the present case, the district magistrate judge, on November 12, 1987, found S.R.H. to be a child in need of care based upon evidence that the child's mother was in the hospital following a beating from a man, that the man was staying in the same house as S.R.H., and that S.R.H. was believed to be in imminent danger. The court apparently also heard evidence of the mother's alcohol and drug problems. As previously noted, there was no record of the hearing.
The termination hearing occurred almost two years later before a different judge. During the period between the adjudication hearing on November 12, 1987, and the termination hearing in August 1989, the record shows that the mother had been hospitalized *425 numerous times for alcohol or drug treatment or for medical reasons. In at least six instances, she left the hospital against medical advice.
The court found that during this same period, the mother had exercised 14 visits with S.R.H. The court found them to be only incidental visits.
Finally, based on a long history of instability in the home, repeated incidents of domestic violence, the mother's emotional illness and alcohol and drug abuse, the emotional neglect of the child, and the mother's failure to comply with the reintegration plan, the court terminated her parental rights.
Unlike Cooper, there was not a direct appeal from the child in need of care adjudication. The judge in the termination hearing did not preside over the child in need of care hearing. He did not have a record of that prior hearing for review.
The court in Cooper was concerned that evidence presented in the child in need of care hearing when a parent is without counsel might be relied upon by the court at the termination hearing. This may well be a problem when the same judge conducts both hearings. When a parent is without counsel at a child in need of care hearing, inadmissible evidence may be admitted, evidence unfavorable to the parent may not be subjected to cross-examination, and evidence favorable to the parent may not be presented. The judge, having relied upon such evidence in making his decision in that hearing, may consciously or unconsciously rely on that same evidence at a termination hearing.
That is not a problem in this case. Even if the judge heard evidence in the termination case that had been presented in the previous child in need of care hearing, this judge was hearing it for the first time, and the mother was represented by counsel.
S.R.H. was two years old when he was removed from his mother's home. He is now over five. During this time, his mother has made little or no progress in dealing with her problems, and the trial court has found that she is unlikely to be able to meet the needs of her child in the foreseeable future.
Sending this matter back to the trial court for a new child in need of care hearing cannot be in the best interest of S.R.H.