16 Kan. App. 2d 69 (1991)
818 P.2d 1179
In the Interest of J.J.B., J.A.B., G.K.B., and J.M.B., Minor Children under Eighteen Years of Age.
No. 65,699
Court of Appeals of Kansas.
Opinion filed October 4, 1991.
Geary N. Gorup, of The Law Offices of Leslie F. Hulnick, P.A., of Wichita, for the appellant natural mother.
*70 Elizabeth Lea Henry and Andrew B. Fletcher, of Fletcher & Mathewson, P.A., of Wichita, for the appellant natural father.
E. Jolene Rooney, staff attorney, Kansas Department of Social and Rehabilitation Services, for the appellee.
Before LARSON, P.J., PIERRON, J., and STEVEN P. FLOOD, District Judge, assigned.
PIERRON, J.:
G.M. and E.B. appeal the order of the court severing their parental rights.
G.M. and E.B. have three children  two boys, J.A.B., born September 5, 1985, and G.K.B., born October 21, 1984, and one daughter, J.M.B., born December 20, 1983. In addition, E.B. has a son by D.D., J.J.B., born September 11, 1982. E.B. had not seen D.D. since shortly after J.J.B. was conceived. D.D. was then living in Los Angeles. D.D.'s parental rights were also severed. This has not been appealed. D.D. was not present at the hearing but was represented by counsel. G.M. and E.B. are not married.
On September 30, 1988, G.M. filed a petition alleging the children were in need of care because he could not provide for them financially and because E.B. lacked the parenting skills and intelligence to provide hygiene and nutrition for the children. G.M. stated he instigated the proceedings because he believed child rearing and housekeeping were E.B.'s responsibility.
A hearing was held on October 7, 1988. As a result of this hearing, the court ordered SRS to provide informal supervision of the family and family services, ordered the parents to attend parenting classes, and set a review hearing for November 14, 1988.
At the November 14 hearing Karen Huffman, an SRS social worker, testified that she first met the family about three months before, when one of G.M.'s sisters reported the situation to SRS. She visited their home then and found the children and the house to be very dirty. Since the hearing on October 7, she had visited the home every day. During this time the family had moved around, living with different friends. She recommended that the children be placed in SRS custody. She also reported that E.B. had completed parenting classes and was keeping the children and the house they were staying in cleaner. However, she then *71 stated there was no improvement. She believed the children were being fed, but that E.B.'s money could be better managed to feed them better food. Her chief complaint was lack of hygiene.
Based solely on Huffman's testimony, the trial court found the children were in need of care and placed them in SRS custody with liberal visitation provided to the parents.
On December 20, 1988, SRS reported that the foster parents had reported suspicions that J.J.B. and G.K.B. had been sexually abused. E.B. and G.M. were questioned about this. A review hearing was held on January 26, 1989, at which time the court ordered the children to be placed in foster care and the parents to obtain counseling at the Counseling Center.
Counsel was appointed to represent E.B. on June 5, 1989. On September 5, 1989, E.B. filed a request through counsel for a review hearing alleging that the criminal investigation of sexual abuse of the children by G.M. resulted in no charges being filed and that SRS had not attempted to return the children. She requested the court either to order SRS to provide a reintegration plan or immediately to return the children to the home. On September 27, 1989, counsel was appointed to represent G.M.
A review hearing was held on October 19, 1989. At the hearing SRS presented reports from the children's and parents' counselors and the foster parents. SRS conceded that the parents had done what was required but, because of the allegations of sexual abuse, SRS and the counselors were recommending that visitation with G.M. be terminated until the matter was resolved and that E.B.'s visitation be supervised by Betty Skinner of the Counseling Center. The court granted SRS' request and further ordered G.M. and E.B. to undergo psychiatric evaluation.
The next review hearing occurred on January 16, 1990. Michelle Rupe, an SRS social worker and case manager for the children, was the sole witness. She presented results of the psychiatric examinations, which showed E.B. needed long term counseling for childhood traumas, participation in Narcotics Anonymous, and drug screenings. Because of these problems and low intellectual level and self insight, her prognosis for being an adequate parent was poor. The psychologist recommended severing her parental rights.
*72 Regarding G.M., the tests showed he would be in need of therapy for sexual relations with his children, if he had been engaged in that activity, and it was recommended that he be screened more carefully for the possibility of substance abuse. The children's counselor recommended they remain in foster care. SRS recommended that the parental rights be severed. Rupe testified that no supervised visits with E.B. and Betty Skinner had occurred as ordered at the previous hearing. The county attorney moved to withdraw because of a conflict of interest. The court allowed the county attorney to withdraw and "advised" SRS to either provide a reintegration plan or file a motion to sever parental rights by January 26, 1990.
SRS did not appear at the January 26, 1990, hearing. At this point, no further acts towards a reintegration or severance had been made. Although the county attorney had disqualified herself because of a conflict of interest, she argued against resuming visitation for E.B. Another hearing was set for February 14, 1990.
On February 8, 1990, SRS filed a motion to sever the parental rights of both E.B. and G.M. Hearings on the motion were heard on April 11, 1990; May 17, 1990; and May 23, 1990. The evidence produced at those hearings will be discussed as needed to resolve the issues. On July 25, 1990, the court severed the rights of both parents. E.B. and G.M. filed timely notices of appeal.
The question of legal representation of indigent parents in Kansas juvenile actions seeking custody of children under the Code for Care of Children (K.S.A. 38-1501 et seq. and its predecessors) has been the subject of significant legislative and judicial concern.
Regarding an action under the child in need of care (CINC) provisions, K.S.A. 38-1505(B) states in part:
"If at any stage of the proceedings a parent desires but is financially unable to employ an attorney, the court shall appoint an attorney for the parent. It shall not be necessary to appoint an attorney to represent a parent who fails or refuses to attend the hearing after having been properly served with process.... A parent or custodian ... may waive counsel either in writing or on the record."
By enacting this provision, the legislature underlined the importance of legal representation where the parent's rights may be jeopardized. Such a provision is appropriate in light of the usual CINC situation where the State may be requesting temporary *73 or permanent deprivation of parental custody and the parents may lack the education and experience to represent themselves and not have the resources to obtain representation. While we presume the State's attorney and the guardian ad litem will act in the best interests of the children and with due regard to the rights of the parents in most instances, nothing can adequately replace independent representation in contested legal matters.
To be sure, many CINC actions are resolved expeditiously through assistance to the family in various ways which re-establishes the viability of the family unit. In such circumstances, counsel for the parents may not provide anything that is needed and may even slow down a unanimously desired disposition and involve an unnecessary party which creates an unjustified expense. Of course, the child always has independent representation through its guardian ad litem under K.S.A. 38-1505(a).
To give the system the flexibility to avoid unneeded involvement by another party, K.S.A. 38-1505 allows for a waiver of counsel by a parent competent to make such waiver. Our courts, in balancing all of these factors, have fleshed out and clarified the right of counsel in these situations. The two most important cases accomplishing this are In re Cooper, 230 Kan. 57, 631 P.2d 632 (1981), and the recent In re S.R.H., 15 Kan. App.2d 415, 809 P.2d 1 (1991). Cooper was an appeal from a deprived child finding under the previous juvenile code where no permanent severance of parental rights was attempted and the custody of the child had been restored to the parents prior to the appeal being heard. S.R.H. was an appeal from a termination of parental rights that had been preceded by a CINC finding. In both cases the appellant had not been represented by counsel at the hearing where the deprived child/CINC finding was made and neither had requested counsel up to that point.
Both cases emphasized that parents' rights of custody and control of their children are liberty interests protected by the Fourteenth Amendment Due Process Clause of the United States Constitution. S.R.H., 15 Kan. App.2d at 419 (citing Cooper, 230 Kan. at 64). The opinion in S.R.H. noted that the statutory provisions concerning appointment of counsel for parents involved in juvenile proceedings in effect at the time of Cooper did not require appointment of counsel for indigent parents. Notwithstanding *74 a lack of specific statutory authority, the Cooper court ruled:
"In deprived child hearings the district court should safeguard the due process rights of an indigent parent and have counsel appointed at the expense of the county when the circumstances appear to require it and, should a request for counsel be refused, grounds for such refusal shall be stated in the record so that a meaningful judicial review can be had." 230 Kan. at 69.
The court further stated:
"In some deprived child hearings the parent or parents involved may voluntarily waive their rights to appointed counsel after being fully advised of their rights. Such waiver should be entered on the record of the proceedings and, in such case, violation of due process rights could not successfully be raised later when the evidence of the deprived child hearing is used to support a petition to sever parental rights." 230 Kan. at 67-68.
Analyzing Cooper's mandate as it applied to the facts in S.R.H., the court stated:
"Employing the balancing test, the trial court must make a determination as to whether an indigent parent is entitled under the Due Process Clause of the United States Constitution to be represented by counsel in a deprived child hearing. Not unlike Cooper, we deal with a hearing that will determine whether a minor child is to be adjudicated a child in need of care. While such adjudication does not necessarily always lead to severance, clearly, under some circumstances, such adjudication may, in fact, lead to severance. Because such hearing at least raises the issue of whether the parent is entitled to the appointment of counsel under the Due Process Clause, the failure of the district court to inquire into this issue as required by Cooper requires us to reverse this case.
"It is clear to us that Cooper requires the court to consider on the record the parent's representation by counsel in cases of temporary deprivation even though the statute then did not provide for appointment of counsel. Likewise, under the Code for Care of Children, Cooper remains good law. The right of an indigent parent to be represented by counsel in a hearing to determine whether the parent's minor child shall be adjudicated a child in need of care is not dependent upon a request by the parent to be represented by counsel. While the statute speaks in terms of a desire, it also speaks in terms of waiver on the record or in writing. The Cooper case, while not requiring the appointment of counsel in every case of temporary deprivation, certainly requires a court hearing a petition to declare a child in need of care to make an independent determination as to whether the parent should be represented by counsel in this proceeding.
"`At the onset of every deprived child proceeding the court should require the State to make an opening statement outlining the evidence which the *75 State expects to introduce in support of the petition, and making suggestions as to recommended solutions for those problems which the State believes necessary and in the best interest of the child. In any case where the conditions outlined prior to the hearing appear to be serious and have remained so for a considerable time counsel should be appointed for the indigent parent or parents. In such cases if no attorney is appointed for the parents any evidence introduced at the deprived child hearing may well be inadmissible in a later severance hearing. Without an attorney to represent the parents, the evidence would be taken in violation of the due process rights of the parent.' 230 Kan. at 67." 15 Kan. App.2d at 421-22.
The Cooper court, in addition to the balancing test, set forth four additional factors when considering whether to appoint counsel:
"(1) length of anticipated separation the parents may face, (2) the presence or absence of parental consent to State assistance, (3) the presence or absence of disputed facts, (4) the parents' ability to cope with relevant documents and to question the State's witnesses at the hearing." 230 Kan. at 68.
We are, of course, aware that the trial judge did not have the benefit of the decision in S.R.H. at the time these matters were being litigated. We believe applying the Cooper/S.R.H. factors to the instant case requires it to be reversed. We have no doubt the court's intention was reintegration until it became clear that severance was a possibility. However, the circumstances here occurred such that the parents have been denied due process due to lack of counsel. We note the original CINC petition (September 30, 1988) was filed on the suggestion of the father. Immediate efforts were made to provide the family with services so as to maintain the family unit. By November 14 it was clear that matters were not improving markedly and further placement in foster care was necessary. The December 20 report of suspected child abuse by the parents should have sounded an alarm that the situation was much more serious than originally believed.
When the review hearing was held January 26, 1989, it was clear that the court was looking at prolonged placement outside the family home. A criminal investigation was apparently in progress and reintegration was not on the horizon. At that point, where it was clear there were serious issues to be resolved and the prospects of reintegration were problematical, counsel should have been appointed. The court obviously hoped that matters would improve and so delayed appointment of counsel for E.B. *76 until June 5, 1989. After appointment, the counsel, who was faced with a CINC determination and a family that had been separated for seven months, apparently attempted to work for reintegration for three months and then filed for a review which ultimately led to the trial of the matter.
It appears the parents' rights were clearly compromised by their failure to have counsel appointed immediately after the January 26, 1989, hearing. The longer a family is separated, the more problems there can be with reintegration.
We acknowledge that significant substantial evidence was presented in support of the severance petition. The parents are limited intellectually and had, at best, minimal parenting skills at the beginning of the process. Abuse is a definite possibility and the prospects for change are not rosy. It is also open to question whether the delay in appointment of counsel was critical. After appointment, ten more months passed before trial was commenced, arguably giving counsel plenty of time to prepare.
Balanced against this is the difficulty in calculating the prejudice caused by the lack of counsel from December or January when obvious and serious concerns about the situation arose until the appointments in June and September. During this time the rights of the parents were not being safeguarded by counsel, with unknown and unknowable ramifications.
There is no good remedy available. We believe the best that can be done is to remand the matter for retrial on the severance petition before a new judge who has not heard the evidence nor been involved in the proceedings. We are keenly aware of the fact that this will constitute yet another delay in a time-sensitive situation, but we see no other alternative.
Due to this finding we do not reach the question of the sufficiency of the evidence presented at trial.
Reversed and remanded.