No. 96,364

In the Interest of J.A.H., A Child Under the Age of 18.

(172 P.3d 1)

Opinion filed December 7, 2007.

*D. Kay Kimball*, of Family Law Practice, LLC, of Topeka, and *Gabriela A. Vega*, of Law Office of Gabriela A. Vega, of Topeka, were on the briefs for appellant natural father.

*Jamie L. Karasek*, assistant district attorney, argued the cause, and *Robert D. Hecht*, district attorney, was with her on the briefs for appellee.

The opinion of the court was delivered by

NUSS, J.: On the morning of trial to determine whether a child was in need of care, his father requested court-appointed counsel and a continuance. In denying the requests, the district court observed that almost 70 days earlier the father had released his court-appointed counsel and elected to proceed pro se. Accordingly, the trial proceeded with the father representing himself and the court finding that the child, J.A.H., was in need of care as defined by K.S.A. 2005 Supp. 38-1502(a)(1), (2), and (3). The Court of Ap-

peals affirmed. *In re J.A.H.*, No. 96,364, an unpublished opinion filed February 23, 2007; 2007 WL 570313. Our jurisdiction is pursuant to K.S.A. 20-3018(b), petition for review granted.

The issues on appeal, and our accompanying holdings, are as follows:

1. Did the district court err in failing to grant the father's request for appointment of counsel and a continuance the morning of trial? No.
2. Did sufficient evidence support the district court's finding that J.A.H. was a child in need of care? Yes.

Accordingly, the judgments of the district court and the Court of Appeals are affirmed.

## FACTS

J.A.H. was born to L.R. (Mother) and D.H. (Father) in April 2000. Mother and Father shared joint custody, but Father was the primary residential parent.

Court Services Officer David Claassen Wilson had worked with Mother and Father as a conciliator on three occasions. When Wilson dealt with them a fourth time, on October 5, 2005, he recommended their case be referred to case management after receiving reports of problems with visitation exchanges and alleged drug use. Mother had reported to Wilson that she suspected Father was using drugs in front of J.A.H. She claimed that J.A.H. was making statements like, " 'I know how to roll a joint cause I saw daddy do it' " and " 'Daddy was smoking a glass pipe with white powder in it.' " On the same day as the referral, Father tested positive for methamphetamine in an urinalysis conducted through court services.

Wilson testified that approximately 1 week later he was assigned to the case as a case manager. He repeatedly wrote to Father and left a number of messages requesting a meeting with him. Wilson eventually scheduled a meeting for October 24.

Wilson testified that on October 20, Father called to say that he did not have transportation and might not be able to make the meeting. Wilson told Father to call if he was unable to attend, but

Father never called and did not attend the meeting. On October 25, Father left a message with Wilson stating that Father was moving to Wichita soon. On October 28, Father left a second message with Wilson complaining about a report Wilson had made.

Sherri Keller, the supervisor of the domestic relations division and Wilson's superior, testified that on October 31 Father showed up unannounced at the court services office, demanding to meet with Wilson's supervisor. Father was upset about Wilson's report recommending that a child in need of care (CINC) petition be filed on behalf of J.A.H. Keller and Wilson attempted to explain to Father the rationale behind the report's recommendation. Father was defiant and claimed that he was planning to move away soon with J.A.H. As he left, he slammed the door and yelled, "Fuck the Court!" and "Fuck Court Services!"

On November 2, the State filed a CINC petition alleging J.A.H. to be a child in need of care, as defined in K.S.A. 2005 Supp. 38-1502(a)(1), (2), and (3). Although the petition did not seek termination of parental rights, among other things it alleged that Mother was a presumptively unfit parent under K.S.A. 38-1585(a)(3) because on two previous occasions she had a child in her custody adjudicated as a CINC. It also alleged that Father was a presumptively unfit parent under K.S.A. 38-1585(a)(2) because he had twice been convicted of assault.

That same day the district court filed an ex parte order of custody finding an emergency existed that threatened J.A.H.'s safety due to the extreme hostility between his parents and Father's threats of absconding with him. The court placed J.A.H. in the custody of Kansas Social and Rehabilitation Services (SRS).

Two days later, on November 4, a temporary custody hearing was held. The district court appointed attorney Deborah Cox to represent Father and set a temporary custody hearing for November 7.

On November 7, Father failed to appear at the hearing. His counsel, Cox, requested a continuance on his behalf, but was denied. The district court entered an order of custody finding an emergency situation existed threatening J.A.H.'s safety because there was no parent available to provide a safe and stable environ-

ment. The court further found that returning J.A.H. home would be contrary to his welfare and authorized relative placement.

On November 21, Father called his attorney, Cox, reporting dissatisfaction with her representation. Later that day, Cox received a message from him requesting that she withdraw as counsel and expressing his desire to proceed as a pro se litigant.

On November 23, Cox filed a motion to withdraw as counsel, reciting the phone calls and messages "wherein he requested that counsel withdraw from his case, as [Father] wished to proceed as a pro se litigant." The court granted the motion that same day. The order recites, among other things, that "good cause has been shown in that the Father requests to continue pro se, and no longer requests the assistance of counsel."

On December 12 the district court conducted a pretrial hearing which Father attended. At the beginning of the hearing, the court ascertained that Father wished to proceed without counsel:

"THE COURT:    [Father], you have the right to proceed in this matter pro se and that's entirely up to you. I would suggest to you that, unless you are law trained, you may be at a disadvantage in these proceedings. But you have the right to proceed without counsel. Is that your desire?
"[FATHER]:    Yes, Your Honor."

The court also warned Father of the dangers of proceeding pro se:

"THE COURT:    You understand that you'll have to comply with the rules of the Court. If you fail to file a Pretrial Questionnaire in its appropriate form you'll be precluded from calling witnesses or presenting exhibits. You understand that?
"[FATHER]:    Yes, Your Honor.
"THE COURT:    Just so you understand that I'm [not] going to take in special exception because you're not represented by counsel. You have the right to that if you choose to represent yourself, which you may do, then you need to understand you got to play by the same rules as everybody else.
"[FATHER]:    I understand, Your Honor."

The district court set the bench trial for 7 weeks later, January 31, and ordered that pretrial questionnaires were due by January

6. Despite the court's warning, Father failed to complete a pretrial questionnaire.

On January 31, immediately prior to trial, the following exchange occurred between Father and the court concerning Father's request for court-appointed counsel and a continuance:

"THE COURT: And, [Father], is it your intention to proceed to trial in this matter?

"[FATHER]: Yes it is, Your Honor, *I request that counsel be appointed.*

"THE COURT: [Father], this case has been on file for a significant period of time. You declined the assistance of counsel and failed to appear previously. *Now you show up on the day of trial and tell me you want an attorney and you're going to want a continuance on this matter?*

"[FATHER]: Yes, Your Honor.

"THE COURT: No. It's unreasonable. You knew before you got here today that you were going to want to have an attorney appointed. You didn't decide that when you walked in the court building today, did you?

"[FATHER]: No. I called last week, Your Honor, and left message on your answering machine.

"THE COURT: I never got any message. You want my administrative assistant to come in and tell me whether she got one, I'll be glad to have her come in and tell you, but the answer is no. *I'll appoint an attorney for you who can represent you in post trial or adjudication matters before the Court, but I'm not going to continue this case at this time because you chose to wait until the last minute to say you wanted an appointed attorney.* I tried to give you an attorney when this case started. I advised you at that point in time you'd be at a disadvantage without the assistance of counsel and you chose to proceed without counsel. Didn't you?

"[FATHER]: Yes I did, Your Honor." (Emphasis added.)

The exchange continued with the court's reiterated denial of a continuance but its agreement to appoint counsel after the hearing, as well as a question on how Father otherwise wished to proceed:

"THE COURT: Okay. So, if you want to proceed to trial today I'll afford you the opportunity to trial. If you want to enter a stipulation you can do that. If you wish to stand silent as to this petition, you may do that as well. *And then I will appoint an attorney to represent you at further stages in the proceedings and if that attorney believes that you have some legitimate basis for asking*

> *that the Court reconsider or set aside any judgment that might*
> *be rendered against you, that attorney may file the appropriate*
> *pleading and the Court will give it due consideration. But I*
> *am not going to grant a continuance today. Understood?*

"[FATHER]: Yes, Your Honor.

"THE COURT: Is it your desire to have a trial or do you wish to enter a stipulation, which is an admission that the allegations in the petition are true, or do you wish to stand silent to the petition; which means you would offer no evidence to rebut or refute those allegations and based upon that I would find the child to be a Child In Need of Care.

"[FATHER]: Proceed to trial, Your Honor?

"THE COURT: Very well. . . ." (Emphasis added.)

Father never responded to the court's invitation to have the legal assistant testify about whether a phone message on the court's answering machine had been received.

Mother, represented by counsel, and J.A.H.'s guardian ad litem (GAL) both stipulated to the facts alleged in the petition. The GAL further stipulated that there was sufficient factual basis in the petition to support a finding that J.A.H. was a child in need of care. Based upon the stipulations, the court found J.A.H. to be a child in need of care, holding its finding in abeyance pending trial as to Father.

The court then proceeded to trial on Father's issues. After the State's presentation, Father cross-examined Mother, Wilson and Keller. In his closing statement he argued this was a matter for the domestic court, not a CINC case. The court complimented him on his effectiveness in getting his point across.

The court then found J.A.H. was a child in need of care as defined in K.S.A. 38-1502(a)(1), (2), and (3). It found that Father was "unable or unwilling to provide a safe and stable environment;" that Father was not cooperative with the court in the proceedings; and that the health and welfare of the child was at risk under the circumstances.

At the conclusion of the trial, the district court inquired into Father's financial situation and appointed an attorney, Gabriela Vega, to represent him in further proceedings.

In an unpublished opinion, the Court of Appeals upheld the district court's rulings, holding:

"Because the parent here had waived his right to counsel and waited over 2 months to make his request for new counsel known to the court, we hold there is no error when the trial court proceeded to trial. Furthermore, we hold there is substantial evidence in the record to uphold the trial court's findings that J.A.H. was a child in need of care." *In re J.A.H.*, 2007 WL 570313, at ° 1.

## ANALYSIS

Issue 1: *The district court did not err in failing to grant Father's request for appointment of counsel and a continuance on the morning of trial.*

Father argues that the district court violated his due process rights and K.S.A. 2005 Supp. 38-1505(b) when it failed to appoint an attorney for him at trial. The State responds that Father waived his right to counsel when he requested that his appointed counsel withdraw and asked to proceed pro se. The State also argues that the real issue is whether the district court abused its discretion in failing to grant a trial continuance for the purpose of appointing counsel to Father.

Resolution necessitates statutory interpretation over which this court exercises unlimited review. *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 819, 104 P.3d 378 (2005).

The right to counsel in CINC proceedings filed in 2005, as here, stemmed from K.S.A. 2005 Supp. 38-1505(b), which stated:

"A parent or custodian of a child alleged or adjudged to be a child in need of care may be represented by an attorney, other than the guardian *ad litem* or a second attorney appointed for the child as provided in subsection (a), in connection with all proceedings under this code. *If at any stage of the proceedings a parent desires but is financially unable to employ an attorney, the court shall appoint an attorney for the parent.* It shall not be necessary to appoint an attorney to represent a parent who fails or refuses to attend the hearing after having been properly served with process in accordance with K.S.A. 38-1534 and amendments thereto. A parent or custodian who is not a minor, a mentally ill person as defined in K.S.A. 59-2946 and amendments thereto or a disabled person as defined in K.S.A. 77-201 and amendments thereto may waive counsel either in writing or on the record." (Emphasis added.)

This statute, 38-1505, was part of the Kansas Code for Care of Children (Code). See K.S.A. 38-1501 *et seq.* The Code further provided that it "shall be liberally construed, to the end that each child within its provisions shall receive the care, custody, guidance,

control and discipline, preferably in the child's own home, *as will best serve the child's welfare and the best interests of the state."* (Emphasis added.) K.S.A. 38-1501. Part of that code, 38-1551(a), addressed delay and continuances: "All proceedings under this code shall be disposed of *without unnecessary delay.* Continuances may be granted for good cause shown." (Emphasis added.) (NOTE: The Kansas Code for Care of Children, K.S.A. 38-1501 *et seq.*, has been revised. Effective January 1, 2007, The Revised Kansas Code for Care of Children, K.S.A. 2006 Supp. 38-2201 *et seq.*, governs. The Revised Code is not applicable to this case because the CINC petition was filed November 2, 2005.)

The Court of Appeals first analyzed Father's due process argument, holding that while the "district court did not comply with the case law when it denied Father's request for counsel at the CINC trial," that "failure does not result in automatic reversal." 2007 WL 570313, at * 3. The court's analysis, however, relied upon outdated case law; its particular due process analysis is no longer necessary in light of changes to the Code, as explained below.

In 1981, this court addressed whether indigent parents have a constitutional right to appointed counsel in "deprived child" proceedings. *In re Cooper*, 230 Kan. 57, 60, 631 P.2d 632 (1981). At that time, indigent parents were not granted a statutory right to appointed counsel in such proceedings; however, in permanent deprivation or severance proceedings, the statute and the case law required that the parent be represented by counsel at the hearing. See K.S.A. 1980 Supp. 38-817; *In re Cooper*, 230 Kan. at 59-60.

In *Cooper*, Marilyn Dickey's daughter was determined to be a deprived child. She argued that deprivation proceedings were no different than termination proceedings; accordingly, counsel should have been appointed to her. 230 Kan. at 58. This court recognized that while the "extent of the parents' interest in the continued and uninterrupted custody of the child, and the due process requirements necessary to protect that interest, vary from jurisdiction to jurisdiction," the parents' rights of custody and control of their children are liberty interests protected by the Fourteenth Amendment Due Process Clause. 230 Kan. at 64-65. Adopting a middle-of-the-road approach, the *Cooper* court held that

counsel for indigent parents is necessary when "the conditions outlined prior to the hearing appear to be serious and have remained so for a considerable time . . . ." 230 Kan. at 67.

The *Cooper* court also stated that counsel was necessary "whenever the parent, unable to present his or her case properly, faces a substantial possibility of loss of custody and permanent severance of parental rights of or prolonged separation from the child." 230 Kan. at 68-69. The court listed certain factors that should be considered in this determination: "(1) length of anticipated separation the parents may face, (2) the presence or absence of parental consent to State assistance, (3) the presence or absence of disputed facts, (4) the parents' ability to cope with relevant documents and to question the State's witnesses at the hearing." 230 Kan. at 68. After reviewing these factors, the court majority concluded that, because of the absence of a threat of permanent deprivation, there was no error in failing to appoint counsel. 230 Kan. at 69.

In 1982, less than one year after *Cooper*, the Kansas Legislature adopted the Code for Care of Children. The Code specifically provided for the appointment of counsel to indigent parents in CINC proceedings; it does so today. See K.S.A. 2005 Supp. 38-1505(b); Revised Code: K.S.A. 2006 Supp. 38-2205(b).

Since 1981, this court has not addressed whether counsel should be appointed in CINC cases. The Court of Appeals has done so in several instances; it continues to rely upon *Cooper's* factor-focused analysis, despite intervening changes in the statutes governing these proceedings.

In the instant case, for example, both parties rely upon *In re S.R.H.*, 15 Kan. App. 2d 415, 421, 809 P.2d 1 (1991), a case decided after the adoption of the Code. There, the Court of Appeals relied on *Cooper* to hold that in every CINC case, the trial court must employ the balancing test to determine whether an indigent parent is entitled to appointed counsel. The Court of Appeals also stated: "The *Cooper* case, while not requiring the appointment of counsel in every case of temporary deprivation, certainly requires a court hearing a petition to declare a child in need of care to make an independent determination as to whether the parent should be

represented by counsel in this proceeding." 15 Kan. App. 2d at 421. See *In re J.J.B.*, 16 Kan. App. 2d 69, 73, 818 P.2d 1179 (1991).

Because the statute requires the appointment of counsel to indigent parents, the factor-focused analysis arising out of *Cooper* is no longer necessary. Here, the analysis is instead limited to whether the statutory right to counsel has been denied.

As a preliminary matter, we note Father argues that his right to counsel was denied because he did not waive counsel when he requested that his attorney withdraw; he simply wanted new counsel appointed. As support, he points to the judge's response following his second request for counsel: "The attorney that I appointed to represent you previously, [Father], was Ms. Coxe [*sic*]. You then basically fired her; told her that you didn't want her assistance; *that you wanted someone else*." (Emphasis added.) While this one statement suggests that Father sought replacement counsel, there is considerable evidence in the record supporting the State's contention that Father actually sought to proceed pro se. We agree with the Court of Appeals' rejection of this argument as it noted:

"First, the motion to withdraw states that on November 21, 2005, Father reported that he was dissatisfied with his counsel's representation and requested to proceed as a pro se litigant. The district court's order granting the motion also stated that Father requested to continue pro se as he '*no longer requests the assistance of counsel.*' (Emphasis added.) Second, as evidenced by the pretrial transcript, the district court advised Father of the disadvantages he might face. Following that advisement, Father reaffirmed his desire to proceed pro se." 2007 WL 570313, at ° 3.

It is additionally important to acknowledge that Father's statutory right to appointed counsel must be balanced against other Code considerations. As mentioned, the Code must be liberally construed to, among other things, ensure that it "will best serve the child's welfare and the best interests of the state." K.S.A. 38-1501. The Code also mandates that "[a]ll proceedings under this code shall be disposed of without unnecessary delay," but this requirement is tempered by a recognition that "[c]ontinuances may be granted for good cause shown." K.S.A. 38-1551(a).

A district court's refusal to grant a continuance is reviewed for abuse of discretion. *State ex rel. Stovall v. Meneley*, 271 Kan. 355,

382, 22 P.3d 124 (2001). Typically, "discretion is abused only when no reasonable person would take the view adopted by the district court." *Vorhees v. Baltazar*, 283 Kan. 389, 393, 153 P.3d 1227 (2007).

It has been said that "[i]n ruling on a motion for continuance . . . a court must consider all circumstances, particularly such matters as the applicant's good faith, his showing of diligence, and the timetable of the lawsuit." *Fouts v. Armstrong Commercial Distributing Co.*, 209 Kan. 59, 65, 495 P.2d 1390 (1972). *Fouts* prefaced its statement of factors with a concern that the denial of a continuance may for all practical purposes deprive a party of his or her day in court, which did not occur in the instant case. Nevertheless, we find its factors helpful to our continuance analysis.

In reviewing the particular *Fouts* factors, we conclude that the trial court's refusal to grant a continuance the morning of trial—in order to appoint counsel—was not an abuse of discretion. Simply put, there was a lack of good faith by Father. Two days after the CINC petition was filed and before any proceedings, he invoked his right and counsel was appointed. Nineteen days later Father then waived that right, counsel was allowed to withdraw, and he elected to proceed pro se. His desire to proceed pro se was reinforced 19 days after that at the pretrial hearing, despite the court's warning that he might be disadvantaged. Then, 69 days after his original waiver, he attempted to re-invoke his right to counsel the morning of trial.

Because of these same facts, Father's request for counsel and a continuance on the morning of trial also demonstrates a lack of diligence to bring the matter to trial. *Houser v. Frank*, 186 Kan. 455, 350 P.2d 801 (1960), provides guidance. There, the defendant knew approximately 1 month before trial that his counsel had been allowed to withdraw and that it would be necessary to retain a new attorney to represent him if he desired counsel. He asked for 2 weeks to obtain new counsel but did not do so until 3:30 in the afternoon 2 days before trial. The morning of trial he argued vigorously for a continuance, which was denied. This court affirmed, acknowledging that such matters are within the trial court's discretion.

Father's request the morning of trial also is inconsistent with the timetable of CINC proceedings. As mentioned, the Code requires that all proceedings be disposed of without unnecessary delay and that Code provisions be "liberally construed" to "best serve the child's welfare." K.S.A. 38-1551(a); K.S.A. 38-1501. The Court of Appeals has held that our courts must strive to decide these cases in "child time" rather than "adult time." See, *e.g.*, *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002). As the Court of Appeals noted in the instant case, "Children should not be left languishing in SRS custody." 2007 WL 570313, at * 5.

In short, we refuse to hold that the statutory right to counsel "at *any* stage of the proceeding" is equivalent to the right at *every time.* K.S.A. 2005 Supp. 38-1505(b). If parents were allowed to waive their right and re-invoke that right at any time, they could delay these important proceedings and interfere with the best interests of the child. But we do agree with the State's argument that a parent's waiver does not necessarily preclude a later appointment of counsel; only that the re-invocation came too late in the instant case.

In reaching our conclusion, we recognize that denying a request for a continuance—which can affect a statutory right to counsel designed to safeguard parental rights—may not necessarily be judged on the typical "abuse of discretion" basis. *Cf. Saucedo v. Winger,* 252 Kan. 718, 731-32, 850 P.2d 908 (1993) (The amount and degree of judicial discretion will vary depending on the character of the question presented for determination. If a statutory right has been violated, the trial court's use of discretion is limited. Under these circumstances there is a greater need for articulation by the trial judge of the reasons for his or her "discretionary' " decision.). However, even if a higher standard is applied as suggested by *Winger,* the pretrial hearing and trial transcripts demonstrate that the district court nevertheless met its "greater need for articulation" of the reasons for its decision denying the request.

Issue 2: *Sufficient evidence supports the district court's finding that J.A.H. was a child in need of care.*

Father argues that the State failed to meet its burden of establishing by clear and convincing evidence that J.A.H. was a child in

need of care as required by K.S.A. 38-1555. That statute provides: "In all proceedings on a petition alleging that a child is a child in need of care, the petitioner or the state must prove by clear and convincing evidence that the child is a child in need of care." Effective January 1, 2007, that statute was repealed and replaced by K.S.A. 38-2250, which similarly states: "The petitioner must prove by clear and convincing evidence that the child is a child in need of care." The State responds that ample evidence exists.

Our standard of review was recently set forth in *In re J.D.C.*, 284 Kan. 155, 170, 159 P.3d 974 (2007):

"On appeal, we examine whether there was substantial competent evidence to support the district court's finding [that child was a child in need of care.] 'Substantial evidence' is such legal and relevant evidence as a reasonable person would accept as sufficient to support a conclusion. *In re S.M.Q.*, 247 Kan. 231, 234, 796 P.2d 543 (1990). An appellate court must not reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. 247 Kan. at 234. In a CINC case, we must, however, be able to discern that the State's evidence was clear and convincing. K.S.A. 38-1555 (now repealed and reenacted as K.S.A. 2006 Supp. 38-2250; effective January 1, 2007). We conduct our assessment, viewing the evidence in the light most favorable to the State. 247 Kan. at 234."

Substantively, K.S.A. 2005 Supp. 38-1502 defines a CINC as "a person less than 18 years of age who: (1) Is without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian; (2) is without the care or control necessary for the child's physical, mental or emotional health; (3) has been physically, mentally or emotionally abused or neglected or sexually abused."

Here, the district court explained its reasons for finding that J.A.H. was a child in need of care:

"And my finding is here today that as of the date of the filing of this petition this child was in fact a child in need of care pursuant to K.S.A. 38-1502(a)(1), (2), and (3). That you were unable or unwilling to provide a safe and stable environment; that you were not cooperative with the Court in the proceedings that were pending before a different division of the District Court of Shawnee County; that the health and welfare of the child was at risk under the circumstances as they existed on that date. And, as such, the Court finds the child to have been a child in need of care."

The State points out that the following facts were elicited at trial. Father tested positive for methamphetamine and refused to submit to urinalysis. Father threatened to abscond with J.A.H. to Wichita despite the order of case management and further failed to attend appointments and cooperate with court services. Mother and Father both failed to comply with court orders and failed to take J.A.H. to school. We also observe that evidence in the record demonstrates that Father was hostile with the domestic court services staff, that J.A.H. told his mother of Father's drug use in J.A.H.'s presence, and that the parents were in and out of conciliation three times with court services.

In *In re J.D.C.*, this court held that the evidence was sufficient to demonstrate J.D.C. was a child in need of care and that the evidence met the clear and convincing standard. 284 Kan. at 170-71. We similarly conclude that the evidence in the instant case is sufficient.

Affirmed.

DAVIS, J., not participating.

MCANANY, J., assigned.