NOT DESIGNATED FOR PUBLICATION

No. 113,913

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of M.S. and M.R.,
Minor Children Under the Age of Eighteen.

MEMORANDUM OPINION

Appeal from Reno District Court; PATRICIA MACKE DICK, judge. Opinion filed November 20, 2015. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant natural mother.

*Cheryl I. Allen*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and POWELL, JJ.

*Per Curiam*: The district court terminated the parental rights of A.R. to her two sons, M.D.S. and M.D.R. In this appeal, she contends insufficient evidence supports the court's finding that she was unfit to properly care for her children. Our review of the record leads us to the opposite conclusion and we affirm the district court.

The Department for Children and Families, in May 2012, investigated an incident of alleged sexual abuse of M.D.S. that occurred while Mother was living in Florida with her boyfriend and the children were staying with their maternal grandmother. When Mother became aware that there was trouble with the children, she returned from Florida and removed the children from grandmother's care. Once the children were back in her custody, Mother reported the incident to the police. The Department made a substantiated

1

finding of abuse by M.D.S.'s maternal uncle. The Department also looked into whether Mother acted improperly when she left the children with her mother but decided that Mother had not been neglectful. The result of the investigation led to the agency providing family preservation services for the family.

The Department became involved with the family again in April 2013. Staff at M.D.S.'s school noticed M.D.S. was acting strange and had several marks on his arms. The school nurse discovered that M.D.S. had similar welts and bruises on his back, shoulders, and side. M.D.S. explained that his mom had whipped him with an electrical cord because he had been playing with her cell phone. School officials informed the police. When police officers interviewed Mother, she admitted that she had become angry at her son for playing with her phone and had whipped him six or seven times with a small belt. As a result, M.D.S. and M.D.R. were both removed from the home and placed in protective custody. In May 2013, the district court determined that the children were in need of care.

*Case plans prove unsuccessful.*

The first case plan developed for Mother and her children set a goal of reintegration and outlined a number of tasks for Mother to complete. From the start, housing and economic stability were identified as areas of concern that Mother needed to address in order for reintegration to take place. Additionally, the plan required Mother to complete a psychological evaluation, complete a parenting class, obtain an individual therapy intake, and refrain from physical discipline during visitation. Indeed, Mother completed a number of the tasks required of her. She completed a parenting class, began personal therapy, and underwent a parenting evaluation; additionally, she conducted herself appropriately during visitations and was employed during most of the 6 months the plan was in effect.

2

Nevertheless, as time wore on, the primary agency concerns continued to be Mother's lack of stable housing and income. Between April 2013, when the children were first removed from the home, and March 2015, Mother had moved six times. She primarily lived with friends and family but also spent time at a homeless shelter and a domestic violence shelter. At the time of the trial, Mother was living at the Domestic Violence Association of Central Kansas (DVACK) shelter in Salina.

Mother's lack of economic stability has been a continuing problem in this case. In April 2013, Mother was working part-time at McDonald's. She left her job at McDonald's 4 or 5 months after the children were taken from her. About 2 months later, she got a job at Tyson's which she kept until June 2014. Sometime later Mother obtained employment as a custodian at the junior college in Hutchinson. She remained at the junior college for about 5 months. After she left the job at the college, Mother moved to Salina to be closer to her children who were in foster homes there. After she got to Salina, Mother found work as a server at two restaurants. She worked at one restaurant for just under 3 months and at the other for about 1 1/2 months. Mother then decided to go back to school, so she quit working to focus her attention on her schooling.

Mother is difficult to work with. Caseworkers and others who worked with her between April 2013 and March 2015 routinely complained that she was defensive and argumentative. Caseworkers also complained that they had difficulty keeping track of her and communicating with her as she moved from location to location. This inability to communicate with her or otherwise locate her led to a number of missed visits over the 2 years this case has been pending.

We must say there has been some progress. With the help of an advocate at the domestic violence shelter, Mother has enrolled in a business administration technology program at a vocational school. To pay for the program, Mother received Pell grants and other financial aid. At the time of the trial, Mother testified that she felt settled into

3

school and was preparing to look for a job. Moreover, the shelter's economic advocate also worked with Mother to help her better understand why she has struggled with positively interacting with other people.

Although she was still living at the shelter at the time of trial, Mother has taken steps towards obtaining permanent housing. She was on the waiting list for Section 8 housing and had applied for Shelter Plus Care, a program that helps homeless individuals with mental health issues or those who have suffered domestic violence obtain housing and get on their feet.

While all of this is laudable, these steps did little to improve the situation of her sons. The district court found, based on the facts recited above, that Mother had been physically, emotionally, and mentally neglectful of the children "most recently by the lack of effort exerted . . . to complete case plan tasks and make the changes necessary for almost two years."

The district court further found that reasonable efforts towards reintegration had been made but were thwarted by Mother's "inability or unwillingness to gain insight into her problems," her "resistance to needed changes," and her lack of effort "to adjust her circumstances, conduct or condition to meet the needs of the children." The court concluded that the State had proven by clear and convincing evidence that after 2 years, Mother was still "without stability or ability to adequately parent" the children and that this inability to properly care for the children was "unlikely to change in the foreseeable future as it hasn't changed in the two years since these cases were initiated."

On appeal, Mother argues that the State failed to prove by clear and convincing evidence that she was "unfit by reason of conduct or condition which renders her unable to care properly for M.D.S. and M.D.R. and that this conduct or condition was unlikely to change in the foreseeable future."

4

*A brief review of the law is helpful.*

When an appellate court reviews a district court's decision to terminate parental rights, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the child was in need of care. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

The Revised Kansas Code for Care of Children allows a court to terminate parental rights when a child has been adjudicated a child in need of care and the parent is unfit because of conduct or condition that renders the parent unable to care properly for a child. Furthermore, the conduct or condition is unlikely to change in the foreseeable future. See K.S.A. 2014 Supp. 38-2269.

The statute lists nonexclusive factors the court shall consider in making a determination of unfitness and contains a separate list of factors to consider when a child is not in the physical custody of the parent. See 2014 Supp. K.S.A. 38-2269(b), (c). Any one of the factors listed may establish grounds for termination of parental rights. Finally, upon finding a parent unfit, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2014 Supp. 38-2269(g)(1).

The district court here referred to the statutory factors as grounds for termination of Mother's parental rights. The district court found:

- physical, mental or emotional abuse or neglect of the children;
- lack of effort on Mother's part to adjust her circumstances, conduct, or conditions to meet the needs of the children;
- the children have been in an out-of-home placement for an extended period of time as a result of Mother's actions or inactions;

- and, while the children were not in Mother's custody, Mother failed to carry out a reasonable plan approved by the court directed toward the integration of the children into her home.

The factual record, viewed in the light most favorable to the State, supports each of the district court's findings with clear and convincing evidence. M.D.S. and M.D.R., after being in foster care for nearly 2 years, were still in need of care because Mother was not fit to care for them. Although Mother had completed a number of case goals, she had not achieved the two that are most critical to reintegration:  suitable housing and economic stability. At the time of the termination hearing, Mother was still living in a shelter and was unemployed.

Based on Mother's failure to achieve these goals, with significant assistance, over the 2 years since this case was initiated, it was reasonable for the district court to conclude that she was unlikely to become stable in the foreseeable future. This is especially true considering our Supreme Court's instruction that child in need of care cases must be decided with reference to "child time" rather than "adult time." See *In re J.A.H.*, 285 Kan. 375, 386, 172 P.3d 1 (2007).

Affirmed.