NOT DESIGNATED FOR PUBLICATION

No. 122,422

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of A.C. and R.J.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed November 6, 2020. Affirmed.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellant natural mother.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before ATCHESON, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: K.L., the natural mother of A.C. and R.J., appeals the district court's termination of her parental rights. Mother argues that the evidence presented did not support the court's finding that she was an unfit parent and that terminating her parental rights was not in the children's best interests. She also asserts procedural claims regarding an evidentiary presumption of unfitness and the district court's denial of her request, made the day of the termination hearing, to continue the proceeding. After carefully reviewing the record and the parties' arguments, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2018, the State filed its joint Child in Need of Care (CINC) Petition and Motion for Termination of Parental Rights on behalf of Mother's two youngest children, A.C. and R.J. In the months leading up to that filing, the Department for

1

Children and Families (DCF) had received referrals concerning possible abuse of the two children by Mother and her oldest son, who was living with her.

A.C. and R.J. had previously been adjudicated children in need of the State's care in 2013. DCF placed the children with a foster mother during the pendency of that case; the children were returned to Mother's care several months later.

In September and October 2018, DCF learned A.C. and R.J., then eight and five, had been living with their former foster mother since May at Mother's request because Mother had lost her housing. The children had continued to live with their former foster mother, even after Mother secured housing for herself in late July, so they could remain in the same school district. Mother would visit and talk to the children often, and the children would stay at her house on weekends.

In November, DCF explained to the children's former foster mother that she risked losing her foster care license if A.C. and R.J. continued to live with her. To remedy the informal and undocumented fostering situation, the foster mother initially agreed to become the children's guardian. But she later changed course for several reasons, including that she would be held responsible if anything happened to the children when they were in Mother's care—a risk that could impact both her foster-care and her teaching licenses. When the foster mother changed her mind about a potential guardianship, DCF held an internal meeting. Based on the Department's concerns regarding Mother's oldest son (who lived with Mother) and Mother's own substance abuse problems, DCF concluded A.C. and R.J. were children in need of care and initiated this action.

In its petition, the State took the position that Mother is presumptively unfit under K.S.A. 2019 Supp. 38-2271(a)(3) because children in her custody had been found to be children in need of care on two other occasions. The court placed A.C. and R.J. in temporary custody. In February 2019, the court adjudicated them to be children in need

2

of care, based largely on Mother's testimony that she could not provide day-to-day care for their needs. The court then ordered the preparation of a 90-day achievement plan to foster reintegration before the termination hearing.

Concerns about Mother's progress involved three key areas: drug use, mental-health issues, and housing. At the termination hearing in July 2019, Mother testified that she had used methamphetamine once or twice a month since February, which she blamed on her housing circumstances and mental-health condition. During her case, Mother was asked to complete over 10 urinalyses or hair-follicle tests. Three tests were positive for methamphetamines, amphetamines, or both—including tests administered on the date of the disposition hearing and the date of the termination hearing. Two tests were clean. And Mother did not take the remaining tests. Mother also failed to complete a substance abuse evaluation. Case workers called Mother throughout the proceedings to request drug testing and to schedule meetings with Mother to discuss her case progress, but Mother never attended these meetings.

Mother has multiple mental-health diagnoses, including borderline personality disorder, post-traumatic stress disorder, generalized anxiety disorder, and bipolar disorder. After her initial intake evaluation, she scheduled six appointments with a therapist to address these conditions. She attended two of these appointments—the most recent in March 2019—and canceled the other four. At the termination hearing, Mother questioned the accuracy of the State's records of her therapy attendance and implied she does not need formal therapy, as she can text prior therapists for advice and receives support from online and community support groups.

Mother also has a history of housing instability that has continued after the situation in May 2018 that led to the children living with their former foster mother. In late October 2018, Mother and her adult son were evicted from their living arrangement. From November 2018 to mid-June 2019, they cycled through living in a hotel, with a

3

friend, and in her truck. She and her son eventually moved into a two-bedroom mobile home in mid-June 2019, about six weeks before the termination hearing.

Mother's adult son has a history of anger problems and drug abuse. DCF had previously investigated allegations that the adult son had thrown a large battery (which Mother described as a brick) out of the window when he was angry and that he had emotionally abused A.C. and R.J. Like Mother, the adult son has a history of drug use and mental-health problems. Although Mother testified at the termination hearing that her son was living with her temporarily (not permanently), she also stated that she would not be willing to ask him to move out of the house if A.C. and R.J. were returned to her.

The court held the termination hearing in late July 2019. At the State's request, the court took judicial notice of Mother's two prior CINC adjudications; Mother did not object to this evidence. After hearing the witnesses' testimony and considering the other evidence presented, the court terminated Mother's parental rights. It found that the State had proved by clear and convincing evidence that Mother was unfit under K.S.A. 2019 Supp. 38-2269(b)(1), (3), (7), and (8), primarily due to her substance-abuse problems. And the court also found, based on the two earlier CINC adjudications, that Mother was presumptively unfit under K.S.A. 2019 Supp. 38-2271(a)(3). Finally, the court concluded that termination was in the best interests of the children. Mother appeals.

DISCUSSION

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Thus, before a court may terminate a person's parental rights, the State must prove that the parent is unfit, that the conduct or condition that renders the parent unfit is unlikely to change in the foreseeable future, and that termination of parental rights is in the best

4

interests of the child or children in question. K.S.A. 2019 Supp. 38-2269(a), (g)(1). In recognition of the fundamental importance of parental rights, any findings relating to a parent's unfitness must be proved by clear and convincing evidence. K.S.A. 2019 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

When reviewing a finding of parental unfitness, this court must determine, after considering all the evidence in a light favoring the State, whether a rational fact-finder could have found it highly probable that the parent was unfit. *In re B.D.-Y.*, 286 Kan. 696, Syl. ¶ 4. We do not reweigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705.

After finding a parent unfit—both at the time of the termination hearing and for the foreseeable future—the district court must determine if termination of parental rights is "in the best interests of the child." K.S.A. 2019 Supp. 38-2269(g)(1). This assessment gives "primary consideration to the physical, mental and emotional health of the child." K.S.A. 2019 Supp. 38-2269(g)(1). Because determining what is in a child's best interests requires an exercise of the district court's discretionary judgment, drawn from the court's experience, knowledge of the case, and pragmatic sense, we will only overturn a district court's best-interests determination when it constitutes an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2. A district court exceeds the broad latitude it is afforded if it rules in a way no reasonable person would have under the circumstances, ignores controlling facts or relies on unproven factual representations, or acts outside the appropriate legal framework. *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 60, 392 P.3d 68 (2017).

On appeal, Mother contends the court should not have terminated her parental rights, asserting that the evidence at her termination hearing was insufficient to prove she was an unfit parent and that the court abused its discretion when it found termination to be in the children's best interests. She also argues that although children in her care had

twice before been adjudicated children in need of the State's care, the court erred in applying a statutory presumption of her unfitness as a parent. Finally, she claims the court abused its discretion when it denied her request for a continuance, which she raised orally on the day of the termination hearing, because she needed more time to personally prepare and review the case record. For the reasons we explain below, we find no error and affirm the court's rulings.

1. *The district court did not err in terminating Mother's parental rights.*

Mother challenges the district court's termination of her parental rights, arguing that the record was not sufficient to find her an unfit parent—either now or for the foreseeable future—and that termination was not in her children's best interests. The district court essentially made two alternative findings regarding Mother's unfitness. First, the court found that the State had proved by clear and convincing evidence that Mother was unfit under K.S.A. 2019 Supp. 38-2269(b)(1), (3), (7), and (8). And the court also found that Mother was presumptively unfit under K.S.A. 2019 Supp. 38-2271(a)(3) because children in her custody had twice before been adjudicated children in need of the State's care. Mother contends both findings were erroneous.

We first consider the district court's findings under K.S.A. 2019 Supp. 38-2269(b). The court found Mother to be an unfit parent under four statutory subsections:

> "(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;
> . . . .
> "(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;
> . . . .

6

"(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family; [and]

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child." K.S.A. 2019 Supp. 38-2269(b)(1), (3), (7), and (8).

Mother takes issue with the court's analysis under each individual subsection. But as the State points out in its brief, these arguments are primarily requests that we reweigh the evidence offered at trial and find Mother's account to be more convincing than the other evidence presented. That is not the role of an appellate court, however. Appellate judges are not present to hear testimony and consider and weigh the context of the evidence presented—those matters in termination proceedings are left to the sound judgment of the district court. Instead, our review is limited to determining whether sufficient evidence was presented to support the district court's findings. See *In re B.D.-Y.*, 286 Kan. at 705.

The existence of any one of the statutory factors listed in K.S.A. 2019 Supp. 38-2269, standing alone, can form the basis for terminating a person's parental rights. K.S.A. 2019 Supp. 38-2269(f). Here, the district court indicated that Mother's extensive history with substance abuse was "primarily the reason" for its unfitness finding. The court noted that Mother tested positive on the date of the termination hearing for methamphetamine and amphetamines; Mother had also tested positive for these substances on the date of the CINC disposition hearing in May 2019. And the court observed that Mother herself testified she used methamphetamine once or twice a month from February 2019 through the termination hearing six months later. Though, as Mother points out in her brief, she tested negative on two occasions, this does not undermine the significant evidence of Mother's drug use or change the fact that she did not show up for far more drug tests than she passed during the pendency of this case. The evidence in the record supports the district court's finding that Mother's substance abuse renders her unfit under K.S.A. 2019 Supp. 38-2269(b)(3).

7

This finding, in and of itself, is sufficient to support the district court's conclusion. But the record supports the court's findings that the State also proved the factors in K.S.A. 2019 38-1168(b)(1), (7), and (8) by clear and convincing evidence. As to her mental condition and diagnoses under section (b)(1), Mother testified that she recognizes the importance of managing her mental-health conditions and noted that when they are in check, she does not have issues with substance abuse. But whatever informal methods she employed to address her needs, she failed to attend four of her six scheduled therapy appointments. Unless Mother shared progress updates from these informal sources, neither case managers nor the court could gauge Mother's progress in treating her mental-health conditions. And to the extent Mother believed her drug use reflected her mental health, she tested positive for methamphetamine use before two hearings in this case, including the termination hearing. The record supports the district court's finding that mother's mental-health conditions render her unfit to parent A.C. and R.J.

Turning to (b)(7) and (b)(8), Mother missed multiple urinalysis and drug testing appointments and missed several therapy sessions. Although she had found housing a month and a half before the termination hearing, she admitted that her home was in a neighborhood unsafe for children. She also continued to live with her adult son, who has a history of violence and emotional abuse toward A.C. and R.J., and refused to ask him to find other housing. Again, the evidence in the record supports the court's findings by clear and convincing evidence that reintegration failed despite the State's efforts and that Mother had not adjusted her circumstances to make reintegration possible.

The evidence similarly supports the district court's finding that Mother's condition is not likely to change in the foreseeable future. Throughout this case, Mother used drugs, refused to submit several urinalyses, attended few therapy sessions, and declined assistance from case workers. This conduct continued to the very day of the termination

8

hearing.  Mother's actions during the pendency of this case serve as a barometer for her future conduct; it appears unlikely her condition will change in the foreseeable future.

Having concluded that the evidence in the record is sufficient to support the district court's findings regarding Mother's unfitness under K.S.A. 2019 Supp. 38-2269(b)(1), (3), (7), and (8), we need not consider in detail Mother's alternative argument regarding another reason why the district court found Mother unfit—the presumption of her unfitness under K.S.A. 2019 Supp. 38-2271(a)(3). Accord *State v. Novotny*, 297 Kan. 1174, 1180, 307 P.3d 1278 (2013) (appellate courts need not consider challenge to district court's conclusion when alternative reason exists to uphold the court's decision).

We note, however, that this case is significantly different from *In re K.R.*, 43 Kan. App. 2d 891, 233 P.3d 746 (2010), which Mother references in her brief. There, the parent had received no previous notice that a statutory presumption could apply, as the presumption had not been mentioned in the State's petition or termination motion. Here, the State informed Mother and the court that Mother was presumed unfit, in light of her two previous CINC adjudications, in its petition and motion and again at the termination hearing. At the hearing, Mother did not object when the district court took judicial notice of those earlier adjudications. And Mother admitted in her testimony that children in her custody had twice been adjudicated children in need of care; each of those adjudications involved allegations of substance abuse—the court's primary concern in this case. Under these circumstances, the district court did not err when it found that Mother had failed to rebut the statutory presumption of unfitness under K.S.A. 2019 Supp. 38-2271(a)(3).

Mother also contends the district court erred by finding termination would be in the best interests of her children. She notes that the children—who were five and eight years old at the time of the termination hearing—know her and are bonded to her. She asserts that instead of terminating her rights, the court should have recognized her efforts

9

to protect her children (such as placing them with their former foster mother) and should have given her more time to address her mental health, drug use, and housing.

Kansas law recognizes that children experience the passage of time differently from adults. K.S.A. 2019 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008). For children, a month or a year seems considerably longer than it would for an adult. For this reason, courts generally lean toward permanent dispositions of questions involving parental rights, rather than allowing cases to remain pending for long and indefinite periods of time. This is particularly true where a court has found that a person's fitness as a parent is not likely to change for the foreseeable future.

Mother made this same argument, seeking an alternative resolution or more time, at the termination hearing. But the district court concluded that the children's need for permanency, particularly because they have been adjudicated children in need of care in the past, weighed in favor of a permanent disposition. Given the testimony and other evidence submitted, the district court did not abuse its discretion when it found that termination was in the best interests of the children's physical, mental, and emotional health and needs. The court did not err in terminating Mother's parental rights.

2. *The district court did not err in denying Mother's request for a continuance.*

The termination hearing in this case was originally scheduled for early June 2019. On the day the hearing was scheduled, Mother appeared in person and requested a continuance, though the record before us does not reflect the reason for her motion. The court granted her request and rescheduled the hearing for July 31, 2019.

On that date, before the introduction of evidence at the hearing, Mother personally addressed the district court and asked the court to terminate her counsel. She indicated she did not feel prepared to proceed with the termination hearing for several reasons. She

10

informed the court that she had asked her attorney for "the whole case file" and had not received it. She stated that she needed this information because she wanted to find out if the State followed the proper procedure to place her children in foster care when they had already been living with their former foster mother. (She acknowledged that there had been an evidentiary hearing as to the question of the children's placement, but she wanted to personally ask questions of the witnesses.) And she indicated she did not understand the termination process and was upset that her attorney had only spent about 15 minutes speaking with her the night before the termination hearing and about 5 minutes the day of the hearing.

The court then addressed Mother's attorney, asking whether she wished to clarify anything for the record. The attorney indicated that she had many conversations with Mother leading up to the termination hearing. She would not disclose the content of those conversations, but the attorney indicated she had spoken with Mother the night before the termination hearing and had asked if Mother had any questions she needed addressed, though that conversation was "not terribly lengthy." The attorney stated she had always "answered whatever questions [Mother had]" and had been "available to her." And the attorney indicated that she did not believe that there was any aspect of the case that had not been provided to Mother or discussed with her.

The court denied Mother's request. The court noted that if Mother was represented by counsel, it was the attorney (and not Mother) who would question witnesses during an evidentiary hearing. The court also explained that to the extent Mother wanted the opportunity to provide her side of the story, she could do so during her testimony at the hearing that was about to begin.

On appeal, Mother argues that the district court should have viewed her request as a motion for a continuance since she did not understand the process going on around her. And Mother also argues that her statements before the termination hearing demonstrate

11

that her attorney provided her ineffective assistance of counsel. Either way, she argues that the case should be remanded to allow her a new termination hearing.

In a proceeding under the Kansas Code for Care of Children, a court may only grant a continuance for good cause. K.S.A. 2019 Supp. 38-2246. A court must consider the child's best interests when considering a continuance. See K.S.A. 2019 Supp. 38-2267(a). And "'a court must consider all circumstances, particularly such matters as the applicant's good faith, [her] showing of diligence, and the timetable of the lawsuit.'" *In re J.A.H.*, 285 Kan. 375, 385, 172 P.3d 1 (2007). Appellate courts review the denial of a continuance for an abuse of discretion. 285 Kan. at 384-85.

Although the district court could have explained the reasons for its denial of Mother's request in greater detail, that denial was not an abuse of discretion. Mother raised multiple issues: whether the State followed the proper procedures when placing her children in temporary custody, her own lack of preparation and communication with her attorney, her inability to directly question witnesses, and that evidence refuting allegations in the State's CINC petition was not presented. But as the State indicated before the district court and now argues on appeal, several of these questions—such as the evidence supporting the court's temporary-placement determinations and whether Mother could personally question earlier witnesses—were not germane to the termination hearing. Mother's more oblique complaints regarding her attorney's communication and her familiarity with the case conflicted with her attorney's explanations. The court did not abuse its discretion in denying a further delay in proceedings, particularly since Mother had requested a continuance on the morning of the previously scheduled termination hearing.

Finally, to the extent Mother is now construing her request before the hearing as an allegation that her attorney was ineffective, appellate courts generally do not address claims alleging ineffective assistance of counsel when they are raised for the first time on

appeal. *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019). But more importantly for purposes of our review, Mother makes no argument as to how her case would have come out differently if the court would have granted her request to terminate counsel and thus cannot show that any action of her attorney prejudiced her in this case. See *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]) (a party asserting ineffective assistance of counsel must show that a different result would have occurred without the lawyer's deficient performance).

The State presented evidence at the hearing that despite the efforts of case workers and the court, Mother continued to use drugs, did not participate in therapy, and did not adjust her living circumstances to allow for reintegration with her children. Mother recognizes that evidence was offered on these points, though she believes the court should have found her explanations more persuasive. But Mother offers no explanation as to how the court's denial of her request to terminate her counsel affected the outcome of the termination hearing, other than vague speculation that she might have been more prepared if the hearing had occurred at a later date. The date of the hearing, however, would not alter the compelling evidence the State would present to the court.

Mother has not shown that the outcome of the termination proceeding would have been different if the hearing would have taken place on a different date. Without a showing of prejudice, Mother cannot succeed on her claim for ineffective assistance of counsel. The district court did not err when it denied Mother's oral request to terminate her counsel and proceeded with the termination hearing scheduled that day.

Affirmed.